Lanzinger, J.
{¶ 1} The Ninth District Court of Appeals certified that a conflict exists between its judgment in this case and the judgments of other appellate districts[1] on whether operation of a public housing authority is a proprietary or a governmental function within the meaning of Ohio’s sovereign-immunity statutes. We determined that a conflict exists and also accepted the discretionary appeal on the issues of whether R.C. 2744.02(B)(4) and (B)(5) apply as exceptions to the public housing authority’s immunity. We hold that the operation of a public housing authority is a governmental function under R.C. 2744.01(C)(2) rather than a proprietary function and remand for the trial court to determine whether the R.C. 2744.02(B)(4) exception to immunity applies.
*456 I. Case Background
{¶ 2} Appellee, Danielle Moore, and her four children lived at 106 South Park Street, Oberlin, Ohio, in an apartment owned by appellant, the Lorain Metropolitan Housing Authority (“LMHA”). On the evening of October 19, 2003, Moore left to run errands, leaving Derrick Macarthy, the father of three of the four children, in the apartment with them. One of the children started a fire in a bedroom while Macarthy was sleeping on the living room couch. Macarthy and two of the children escaped, but Dezirae Anna Nicole Macarthy and D’Angelo Anthony Marquez Macarthy were killed in the fire.
{¶ 3} On October 12, 2004, Moore, individually and in her capacity as the administrator of the estates of Dezirae and D’Angelo Macarthy, and in her capacity as the parent and next friend of the deceased children’s siblings Jamar Moore and Deilani Macarthy, filed a lawsuit against defendants LMHA, its executive director Homer Verdin, and other unknown employees, for the wrongful deaths of Dezirae and D’Angelo. Moore claimed that because LMHA removed the apartment’s only working smoke detector and negligently failed to replace it, Derrick Macarthy did not wake in time to rescue two of the children.
{¶ 4} The trial court noted in its findings of fact that a police officer on the scene believed that Derrick Macarthy’s behavior indicated that he was under the influence of cocaine at the time of the fire and that an outside agency, conducting an annual inspection of the premises two weeks before the fire, reported that there was a working smoke detector in Moore’s unit.
{¶ 5} The trial court granted summary judgment to the defendants[2] on the grounds that LMHA was a political subdivision entitled to immunity pursuant to R.C. Chapter 2744. The court found that the operation of a public housing authority is a governmental function and that none of the exceptions to immunity, and particularly R.C. 2744.02(B)(4), applied.
{¶ 6} On appeal to the Lorain County Court of Appeals, Moore argued that the trial court erroneously found that LMHA performs a governmental function. The court of appeals agreed, reversing the summary judgment and remanding the case for further proceedings. Moore v. Lorain Metro. Hous. Auth., Lorain App. No. 06CA008995, 2007-Ohio-5111, 2007 WL 2810014. We accepted LMHA’s discretionary appeal in conjunction with the certified conflict.
II. Legal Analysis
A. Political Subdivision Immunity
{¶ 7} The General Assembly enacted the Political Subdivision Tort Liability Act, codified at R.C. Chapter 2744, in 1985 in response to this court’s abolishment *457 of common-law sovereign immunity in Haverlack v. Portage Homes, Inc. (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749. Cramer v. Auglaize Acres, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9. The Act sets forth the defenses and immunities available to political subdivisions in civil actions for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision in connection with a governmental or proprietary function. R.C. 2744.02(A)(1). The Act also provides exceptions to immunity in specified circumstances. See R.C. 2744.02(B).
{¶ 8} A political subdivision is “a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state.” (Emphasis added.) R.C. 2744.01(F). LMHA is a metropolitan housing authority, defined in R.C. 3735.31: “A metropolitan housing authority created under sections 3735.27 to 3735.50 of the Revised Code, constitutes a body corporate and politic.” The parties do not dispute that LMHA is a political subdivision.
{¶ 9} Whether a political subdivision is protected against tort liability under R.C. Chapter 2744 involves a three-tiered analysis: “First, R.C. 2744.02(A)(1) sets out a general rule that political subdivisions are not liable in damages. In setting out this rule, R.C. 2744.02(A)(1) classifies the functions of political subdivisions into governmental and proprietary functions and states that the general rule of immunity is not absolute, but is limited by the provisions of R.C. 2744.02(B), which details when a political subdivision is not immune. Thus, the relevant point of analysis (the second tier) then becomes whether any of the exceptions in R.C. 2744.02(B) apply. Furthermore, if any of R.C. 2744.02(B)’s exceptions are found to apply, a consideration of the application of R.C. 2744.03 becomes relevant, as the third tier of analysis.”[3] Greene Cty. Agricultural Soc. v. Liming (2000), 89 Ohio St.3d 551, 556-557, 733 N.E.2d 1141.
{¶ 10} The general rule states that “a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.” R.C. 2744.02(A)(1). R.C. 2744.01 explains whether a given function is proprietary or governmental.
{¶ 11} A “proprietary function” is a function that either (1) is specifically listed in R.C. 2744.01(G)(2), which lists examples of proprietary functions, or (2) is not described in R.C. 2744.01(C)(1)(a), (b), or (C)(2) and “promotes or preserves the *458 public peace, health, safety, or welfare and * * * involves activities that are customarily engaged in by nongovernmental persons.” R.C. 2744.01(G)(1).
{¶ 12} By contrast, R.C. 2744.01(C) provides two routes to determine whether a given function is governmental. First, the statute refers to the list in R.C. 2744.01(C)(2) of “specified” functions that the General Assembly has expressly deemed governmental. In the alternative, a function is governmental if it meets one of three independent standards, enumerated in R.C. 2744.01(C)(1)(a) through (c).
{¶ 13} LMHA, as a metropolitan housing authority, performs a specified “governmental function” under R.C. 2744.01(C)(2)(q). The statute provides that “[u]rban renewal projects and the elimination of slum conditions” are governmental functions. LMHA performs these functions.
{¶ 14} Before creating a metropolitan housing authority, the director of development must determine that either “[ujnsanitary or unsafe inhabited housing accommodations exist” or there is “a shortage of safe and sanitary housing accommodations in that area available to persons who lack the amount of income that is necessary * * * to enable them, without financial assistance, to live in decent, safe, and sanitary dwellings without congestion.” R.C. 3735.27(A)(1) and (2).
{¶ 15} Once created, a metropolitan housing authority is required to use its power in order to “clear, plan, and rebuild slum areas within the district in which the authority is created, to provide safe and sanitary housing accommodations to families of low income within that district, or to accomplish any combination of the foregoing purposes.” R.C. 3735.31.
{¶ 16} In order to carry out this mission, a metropolitan housing authority can designate portions of the region as “slum areas” and then provide and maintain housing projects in those areas, in addition to other, attendant powers. R.C. 3735.31(B). The housing project[4] in which Moore resided is operated by LMHA.
*459 {¶ 17} This analysis finds further support in R.C. 2744.01(C)(2)(g), which provides that governmental functions include the “repair, renovation, maintenance, and operation of buildings that are used in connection with the performance of a governmental function.” Housing projects are designed to eliminate slum conditions, and the repair and maintenance of public housing are attendant powers of the public housing authority, performed to further the elimination of slum conditions.
{¶ 18} Finally, we note that LMHA’s argument that it performs a governmental function is bolstered by R.C. 2744.01(F). The parties do not dispute that LMHA is a political subdivision under R.C. 2744.01(F), which defines a political subdivision as one “responsible for governmental activities.” These governmental activities involve a governmental function.
{¶ 19} In view of the foregoing, we hold that the operation of a public housing authority is a governmental function under R.C. 2744.01(C)(2). We therefore need not analyze the three independent standards enumerated in R.C. 2744.01(C)(1)(a) through (c).
B. Exceptions to political subdivision immunity under R.C. 2744.02(B)
{¶ 20} Having held that LMHA, as a political subdivision, performs a governmental function by providing public housing, we must now consider whether any of the R.C. 2744.02(B) exceptions to political subdivision immunity apply. The trial court found that the only potential exception was R.C. 2744.02(B)(4), while the court of appeals discussed R.C. 2744.02(B)(5).[5] 6 LMHA argues that neither exception removes its immunity.
C. R.C. 2744.02(B)(5)
{¶ 21} R.C. 2744.02(B)(5) states that a political subdivision may be liable when a statute expressly imposes liability: “[A] political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 [hospitals] and 5591.37 [guardrails] of the Revised Code.” (Emphasis added.) Moore argues that R.C. Chapter 5321, the Landlords and Tenants Act, is among the statutes that expressly impose liability. But that chapter of the Revised Code imposes civil liability on landlords in general. It does not expressly impose liability on the LMHA or any other political subdivision.
*460 D. R.C. 27U-02(B)a)
{¶ 22} R.C. 2744.02(B)(4) states that “[ejxcept as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses * * (Emphasis added.)
{¶ 23} LMHA claims that the legislature intended to apply this exception only to buildings that are similar to “office buildings and courthouses” and that the salient characteristics of office buildings and courthouses are that, unlike public housing, the public frequents them and transacts business in them.
{¶ 24} But the phrase “including, but not limited to” denotes a nonexclusive list of buildings to which the exception may apply. The phrase “buildings that are used in connection with the performance of a governmental function” is the critical phrase. We conclude that a unit of public housing is a building “used in connection with the performance of a governmental function” within the meaning of R.C. 2744.01(C)(2). LMHA is therefore liable for negligence if the deaths in this case were due to physical defects occurring on its property within the meaning of R.C. 2744.02(B)(4).
{¶ 25} The final step in the analysis of (B)(4) is to determine whether absence of a required smoke detector is a “physical defect” occurring on the grounds of LMHA’s property. Because the trial court did not fully consider this issue, which, if established, would dissolve immunity, we must remand to the trial court for further proceedings.
III. Conclusion
(¶ 26} We resolve the certified conflict by holding that the operation of a public housing authority is a governmental function within the meaning of Ohio’s sovereign-immunity statutes. We therefore reverse the judgment of the court of appeals and remand this case to the trial court for a determination of negligence and available affirmative defenses.
Judgment reversed and cause remanded.
Moyer, C.J., and Lundberg Stratton and O’Connor, JJ., concur.
Pfeifer, J., concurs in judgment only.
*461 O’Donnell, J., concurs in part and dissents in part.
Cupp, J., dissents.

. The conflicting eases are Rhoades v. Cuyahoga Metro. Hous. Auth., 8th Dist. No. 84439, 2005-Ohio-505, 2005 WL 315422; McCloud v. Nimmer (1991), 72 Ohio App.3d 533, 595 N.E.2d 492 (8th District); Jones v. Lucas Metro. Hous. Auth. (Aug. 29, 1997), 6th Dist. No. L-96-212, 1997 WL 543049; and Country Club Hills Homeowners Assn. v. Jefferson Metro. Hous. Auth. (1981), 5 Ohio App.3d 77, 5 OBR 189, 449 N.E.2d 460.

. Only LMHA remains a party on appeal.

. Potential defenses under R.C. 2744.03 have not been raised and will not be discussed. The issue is whether LMHA may claim immunity and, if so, whether any statutory exception to immunity applies.

. {¶ a} “ ‘Housing project’ or ‘project’ means any of the following works or undertakings:
{¶ b} “(1) Demolish, clear, or remove buildings from any slum area. Such work or undertaking may embrace the adaptation of such area to public purposes, including parks or other recreational or community purposes.
{¶ c} “(2) Provide decent, safe, and sanitary urban or rural dwellings, apartments, or other living accommodations for persons of low income. Such work or undertaking may include buildings, land, equipment, facilities, and other real or personal property for necessary, convenient, or desirable appurtenances, streets, sewers, water service, parks, site preparation, gardening, administrative, community, health, recreational, educational, welfare, or other purposes.
{¶ d} “(3) Accomplish a combination of the foregoing. ‘Housing project’ also may be applied to the planning of the buildings and improvements, the acquisition of property, the demolition of existing structures, the construction, reconstruction, alteration, and repair of the improvements, and all other work in connection therewith.” R.C. 3735.40(C).

. R.C. 2744.02(B)(2) would apply only if we were to hold that the operation of a public housing authority is a proprietary function.