[Cite as *Lawson v. Mahoning Cty. Mental Health Bd.*, 2010-Ohio-6388.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

ELAINE LAWSON, ADMINISTRATRIX )
OF THE ESTATE OF )
STEPHEN LAWSON, )
)  CASE NO.    10 MA 24
　　　PLAINTIFF-APPELLANT, )
)
　　- VS - )  O P I N I O N
)
MAHONING COUNTY MENTAL )
HEALTH BOARD, et al., )
)
　　　DEFENDANTS-APPELLEES. )


CHARACTER OF PROCEEDINGS:　　　Civil Appeal from Common Pleas Court,
　　　　　　　　　　　　　　　　　　　Case No. 08CV973.

JUDGMENT:　　　　　　　　　　　　　Affirmed.

APPEARANCES:
For Plaintiffs-Appellants:　　　　　　　Attorney Ronald Yarwood
　　　　　　　　　　　　　　　　　　　Attorney James Gentile
　　　　　　　　　　　　　　　　　　　42 North Phelps Street
　　　　　　　　　　　　　　　　　　　Youngstown, Ohio  44503

For DefendantsAppellees:　　　　　　Attorney John McLandrich
　　　　　　　　　　　　　　　　　　　Attorney James Climer
　　　　　　　　　　　　　　　　　　　Attorney Frank Scialdone
　　　　　　　　　　　　　　　　　　　100 Franklin's Row
　　　　　　　　　　　　　　　　　　　34305 Solon Road
　　　　　　　　　　　　　　　　　　　Cleveland, Ohio  44139

JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

　　　　　　　　　　　　　　　　　　　Dated:  December 22, 2010

VUKOVICH, P.J.

¶{1}    Plaintiff-appellant Elaine Lawson, Administratrix of the Estate of Stephen Lawson (the estate) appeals the decision of the Mahoning County Common Pleas Court granting defendant-appellee City of Youngstown's Motion for Judgment on the Pleadings.

¶{2}    The estate's first argument for reversal concerns the statutory claims that were allegedly made in the complaint.  One of the reasons the trial court granted the Judgment on the Pleadings was because it found that the complaint did not adequately contain the allegation that Youngstown violated the rights owed to the deceased that are enumerated in R.C. 5123.62 and R.C. 5123.64.   The estate argues that that determination is incorrect and accordingly, it contends that Motion for Judgment on the Pleadings was erroneously granted.

¶{3}    Youngstown counters the above argument by contending that even if the trial court incorrectly determined that the complaint did not adequately plead a violation of R.C. 5123.62, it is still immune from liability under R.C. 2744.02(B).  According to Youngstown the only possible applicable exception to liability under R.C. 2744.02(B) is (B)(5) which indicates that if a statute expressly imposes civil liability on the political subdivision, the grant of immunity under R.C. 2744.02(A)(1) is stripped.  It claims that neither R.C. 5123.62 nor R.C. 5123.64 expressly impose civil liability.

¶{4}    A review of the complaint indicates that the trial court was incorrect in its determination that the complaint did not plead a violation of R.C. 5123.62 and R.C. 5123.64.  That said, Youngstown is correct that neither R.C. 5123.62 nor R.C. 5123.64 expressly impose liability and as such, R.C. 2744.02(B)(5) does not strip Youngstown of its sovereign immunity.  Accordingly, the estate's first argument does not provide a basis for reversal.

¶{5}    The second and third arguments made by the estate contend that the common law claim that Youngstown acted negligently in granting the proprietors of the group home a license to operate it.   The estate contends that the trial court's determination that licensing a group home is a governmental function and, as such, immunity applies, is incorrect.  It asserts that licensing is a proprietary function and R.C. 2744.02(B)(2), which strips a governmental body's general immunity for

proprietary functions, applies. While the estate acknowledges that licensing is not listed in either of the lists of governmental or proprietary functions enumerated in R.C. 2744.01(C)(2) and (G)(2) respectively, it contends that licensing meets the general definition of proprietary function in R.C. 2744.01(G)(1) because the granting or denying of a license is part of everyday business that is engaged in regularly by private parties.

¶{6} Youngstown counters arguing that licensing a group home is a governmental function and R.C. 2744.02(B)(2) is inapplicable. It first contends that licensing a group home falls under the list of governmental functions enumerated in R.C. 2744.01(C)(1), specifically under either subsection (o) or (x). Alternatively, it argues that licensing is a governmental function because it can satisfy any of the three provisions under the general definition of governmental function in R.C. 2744.01(C)(1)(a)-(c).

¶{7} We agree with the estate that licensing a group home is not listed in either of the lists for governmental or proprietary functions in R.C. 2744.01(C)(2) or (G)(2), however, we disagree with its assertion that licensing meets the general definition of a proprietary function. While licensing in some situations may be a proprietary function, licensing a group home is not, as the act of licensing a group home is typically done by a governmental entity. Thus, the trial court's grant of Judgment on the Pleadings for the common law claims was not erroneous.

¶{8} Consequently, none of the estate's arguments require reversal. The trial court's Judgment on the Pleadings is hereby affirmed.

STATEMENT OF CASE

¶{9} On March 11, 2007, Stephen Lawson, the deceased, was residing in a group home at 135 Illinois Avenue in Youngstown, Ohio. Also residing at that group home was James DiCioccio. On that date, DiCioccio choked Stephen and Stephen died as a result.

¶{10} Thereafter, Elaine Lawson filed a wrongful death action on behalf of Stephen's estate against Youngstown, as well as others not involved in this appeal. The estate asserted in the complaint that the deceased was a "disabled, mentally retarded and incapacitated adult." The estate alleged that Youngstown was responsible for licensing the group home and it should have known that it was not an appropriate facility and was dangerous to the residents. It also alleged that

Youngstown knew of DiCioccio's history of aggression and thus, Youngstown breached its duty of care owed to the decedent. It also contended that Youngstown was negligent in continuing to permit the group home to operate when Youngstown knew or should have known that it was dangerous to the health, safety and welfare of the residents of the group home. Lastly, the estate alleged that all defendants, including Youngstown, provided services to the residents under R.C. 5123.62, that they were negligent in breaching the duty under R.C. 5123.62 and thus, were the direct and proximate cause of death. 03/10/08 Complaint; 03/25/08 Amended Complaint.

¶{11} Youngstown answered the complaint and admitted that it licenses certain group homes, but denied any legal enforceable duties arising from licensing activities. It also asserted as a defense that it was immune from liability based on the common law and R.C. Chapter 2744. 05/13/08 Answer.

¶{12} In June 2009, Youngstown filed a Motion for Judgment on the Pleadings asserting that it was immune from liability based on R.C. Chapter 2744. The estate filed a response to the motion asserting that Youngstown was not immune from liability because licensing is a not a governmental function, rather it is a proprietary function. 08/17/09 Response.

¶{13} Following these filings the magistrate issued its decision denying the Motion for Judgment on the Pleadings. 09/22/09 Decision. It found that licensing was a proprietary function, and thus, immunity did not survive based on R.C. 2744.02(B)(2). It also found that R.C. 5123.64 expressly grants liability against Youngstown and R.C. 2744.02(B)(5) applies and immunity is stripped.

¶{14} Youngstown filed objections to the magistrate's decision arguing that licensing is a governmental function not a proprietary function and R.C. 2744.02 does not strip its immunity. Next, it argued R.C. 5123.64 does not expressly impose liability and R.C. 2744.02(B)(5) does not strip its immunity.

¶{15} The trial court found merit with the objections and instructed the magistrate to correctly apply R.C. Chapter 2744. 10/28/09 J.E. The magistrate then issued a new decision complying with the trial court's order. It found that the Motion for Judgment on the Pleadings should be granted because immunity applied; R.C. 2744.02(B)(2) does not strip immunity because licensing is a governmental function and R.C. 2744.02(B)(5) does not strip immunity because R.C. 5123.62 and R.C.

5123.64 do not expressly confer liability on a political subdivision. 11/02/09 Decision. The estate objected to the magistrate's decision.

¶{16} The trial court reviewed the objections and found that there was no error of law or other defect on the face of the Magistrate's Decision. As to the common law claims, it then found that licensing or failure to properly license a group home is a governmental function from which immunity attaches. As to the statutory claims, the trial court found that the complaint failed to list one or more rights in R.C. 5123.62 that Youngstown violated. It then added that R.C. 5123.62-5123.64 does not expressly impose liability as required by R.C. 2744.02(B)(5). Thus, it concluded that Youngstown was immune from liability and that granting the Motion for Judgment on the Pleadings was appropriate. 01/26/10 J.E. The judgment included no just cause for delay language and stated that it was a final appealable order. The estate timely appealed the trial court's January 26, 2010 order.

## STANDARD OF REVIEW

¶{17} All assignments of error address the trial court's decision to grant Youngstown's Motion for Judgment on the Pleadings. Likewise they also address in some way Youngstown's claim and the trial court's finding that Youngstown is immune from liability under the governmental immunity statutes in R.C. Chapter 2744. Thus, our review of the assignments involves both the standard of review for the granting of a Motion for Judgment on the Pleadings and the law on sovereign immunity.

¶{18} First, as to the standard of review, we have previously indicated that we review the granting of a Motion for Judgment on the Pleadings under the same standard we use to review Civ.R. 12(B)(6) rulings. *Doolittle v. Shook*, 7th Dist. No. 06MA65, 2007-Ohio-1412, ¶9. The standard of review for a Civ.R. 12(B)(6) motion to dismiss requires the appellate court to independently review the complaint or counterclaim to determine if the dismissal was appropriate. *Ferreri v. Plain Dealer Publishing Co.* (2001), 142 Ohio App.3d 629, 639. A motion to dismiss for failure to state a claim upon which relief can be granted is a procedural motion that tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 548. In order to dismiss a complaint for failure to state a claim upon which relief can be granted, the court must find beyond doubt that appellant can prove no set of facts warranting relief after it presumes all factual

allegations in the complaint are true, and construes all reasonable inferences in appellant's favor. *State ex rel. Seikbert v. Wilkinson* (1994), 69 Ohio St.3d 489, 490.

¶{19} Second, as to governmental immunity the general rule in R.C. 2744.02(A)(1) is that a political subdivision, which in this case would be Youngstown, may not be held liable in damages for injury or loss caused by an act or omission in connection with a governmental or proprietary function. This general rule, however, is subject to the five exceptions carved out in R.C. 2744.02(B). In these five circumstances, a political subdivision will be responsible for its tortious conduct. Still, although one of these circumstances exists, the political subdivision can re-establish its immunity using the defenses in R.C. 2744.03.

¶{20} Both parties agree that Youngstown has a general grant of immunity under R.C. 2744.02(A)(1). Their disagreement lies in whether the exceptions to immunity in R.C. 2744.02(B), specifically R.C. 2744.02(B)(2) and (5), can strip that general grant of immunity. With the above laws in mind, we now turn to the assignments of error.

<u>FIRST ASSIGNMENT OF ERROR</u>

¶{21} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S OBJECTIONS TO THE MAGISTRATE AS TO HIS HOLDING THAT APPELLANT'S AMENDED COMPLAINT FAILED TO PLEAD A VIOLATION OF THE RIGHTS ENUMERATED IN ORC § 5123.62 WITH SUFFICIENT PARTICULARITY TO EVADE DISMISSAL."

¶{22} This assignment of error deals solely with the alleged statutory claims the estate asserted against the City of Youngstown. In the trial court's final order it stated that R.C. 5123.62 lists the rights of a person with a mental retardation or developmental disability. The court stated that after reviewing the complaint it could not find that the complaint alleged one or more rights that Youngstown violated under that section.

¶{23} That determination is incorrect. The final two paragraphs of the complaint state:

¶{24} "All Defendants herein are providers of services to persons with mental retardation or developmental disabilities and are therefore obligated to provide those rights enumerated in Section 5123.62 of the Ohio Revised Code.

**¶{25}** "All Defendants were negligent, breaching their duties of care as set forth in Ohio Revised Code Section 5123.64, thus directly and proximately causing the death of Stephen A. Lawson." 03/25/09 Amended Complaint.

**¶{26}** Ohio is a notice pleading state, which means that the claim must concisely set forth only those operative facts sufficient to give fair notice of the nature of the action. *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, ¶29. These final two paragraphs clearly assert that Youngstown violated the deceased rights under R.C. 5123.62 and R.C. 5123.64.

**¶{27}** In addition to the final two paragraphs of the complaint clearly asserting a violation of R.C. 5123.62 and R.C. 5123.64, the estate also asserted in the complaint that Youngstown was responsible for licensing group homes and providing for the health, safety and welfare of the residents. It further claimed that Youngstown knew or should have known that the home was not an appropriate facility and that Youngstown knew or should have known that DiCioccio was residing at the home and had a record of aggression. It then alleged that Youngstown was negligent in continuing to permit the home to operate when it had knowledge of or should have had knowledge of the danger to the health, safety and welfare of the residents.

**¶{28}** Reading those allegations in conjunction with the last two paragraphs of the complaint, it can be concluded that the complaint is alleging that Youngstown violated R.C. 5123.62(A), (B) and (O), which states:

**¶{29}** "(A) The right to be treated at all times with courtesy and respect and with full recognition of their dignity and individuality;

**¶{30}** "(B) The right to an appropriate, safe, and sanitary living environment that complies with local, state, and federal standards and recognizes the persons' need for privacy and independence;

**¶{31}** "* * *

**¶{32}** "(O) The right to be free from emotional, psychological, and physical abuse."

**¶{33}** Consequently, when the complaint is read in its entirety, the allegations asserted against Youngstown were sufficient to put Youngstown on notice that the estate was pleading a violation of R.C. 5123.62 and R.C. 5123.64. As such, the trial court erroneously concluded that the complaint did not sufficiently plead a violation of R.C. 5123.62 and R.C. 5123.64.

¶{34} That said, the existence of error does not require reversal in this instance. In addition to making the finding regarding the adequacy of the pleadings, the trial court also stated:

¶{35} "As a result, ORC §5123.62-64 does not expressly grant liability as required by ORC §2744.02(B)(5) and such does not apply." 01/26/10 J.E.

¶{36} This is a clear finding that sovereign immunity applies to any claim made under R.C. 5123.62 through R.C. 5123.64. Furthermore, that finding is correct as a matter of law.

¶{37} R.C. 2744.02(B)(5) states:

¶{38} "(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term 'shall' in a provision pertaining to a political subdivision."

¶{39} The estate uses R.C. 5123.62 and R.C. 5123.64 to state that Youngstown owed a duty of care to the deceased. R.C. 5123.62 does not contain any language that can be construed as expressly imposing liability on Youngstown; it is a bill of rights for persons with mental retardation or a developmental disability. R.C. 5123.64 is the statute that is used to give R.C. 5123.62 enforcing powers. That statute provides:

¶{40} "Any person with mental retardation or a developmental disability who believes that the person's rights as enumerated in section 5123.62 of the Revised Code have been violated may:

¶{41} "(1) Bring the violation to the attention of the provider for resolution;

¶{42} "(2) Report the violation to the department of mental retardation and developmental disabilities, the ombudsperson section of the legal rights service, or the appropriate county board of mental retardation and developmental disabilities;

**¶{43}** "(3) Take any other appropriate action to ensure compliance with sections 5123.60 to 5123.64 of the Revised Code, including the filing of a legal action to enforce rights or to recover damages for violation of rights." R.C 5123.64(B) (version in effect in 2007).

**¶{44}** One of our sister districts has determined that R.C. 5123.64 does not expressly impose liability and, as such, R.C. 2744.02(B)(5) does not strip liability. *Havely v. Franklin Cty.*, 10th Dist. No. 07AP-1077, 2008-Ohio-4889, ¶54-55 (injured party was suing the Department of Mental Retardation and Developmental Disability (MRDD)).[1] In reaching that decision, the Tenth Appellate District reviewed the Ohio Supreme Court's decision in *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, where the supreme court found that R.C. 2744.02(B)(5) applies to strip the political subdivision of immunity because the Ohio Nursing Home Patients' Bill of Rights expressly imposed liability. *Havely*, supra, ¶54. The Tenth Appellate District then compared the Nursing Home Patients' Bill of Rights statute, R.C. 3721.71(I) and R.C. 5123.64. Id. at ¶55. R.C. 3721.17(I) specifically states:

**¶{45}** "(I)(1)(a) Any resident whose rights under sections 3721.10 to 3721.17 of the Revised Code are violated has a cause of action against any person or home committing the violation."

**¶{46}** Consequently, since that statute specifically authorizes a civil action against the individual tortfeasor and the "home," and R.C. 5123.64 contains no specific authorization for the bringing of a suit against political subdivisions that operate facilities for the mentally retarded, the Tenth Appellate District concluded that R.C. 2744.02(B)(5) prohibits construing liability to exist solely because a statute imposes a responsibility or mandatory duty upon a political subdivision. Id.

**¶{47}** In coming to that determination the Tenth Appellate District also commented that the Ohio Supreme Court "has observed that no section of the Ohio Revised Code expressly imposes liability upon a public agency for the failure to perform the duties enumerated in R.C. 5123.62. *Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardation and Dev. Disabilities,* 102 Ohio St.3d 230, 2004-Ohio-2629." Id.

**¶{48}** In *Estate of Ridley*, the estate conceded that no section of the Revised Code expressly imposed liability for failure to perform the duties in R.C. 5123.62. It

---

[1]The version of R.C. 5123.64(B) used to decide *Havely* is identical to the version of R.C. 5123.64(B) that is at issue in this case.

argued that the Enforcement Clause of the Fourteenth Amendment would satisfy R.C. 2744.02(B)(5). 102 Ohio St.3d 230, 2004-Ohio-2629, ¶24. The Court concluded that "none of these code sections-R.C. 5123.62, * * * -through the Enforcement Clause of the Fourteenth Amendment expressly imposes liability within the meaning of former R.C. 2744.02(B)(5)." Id. at ¶26.

¶{49} The Supreme Court's decision in *Estate of Ridley* is not directly on point as to whether R.C. 5123.64 expressly imposes liability on a political subdivision. However, our sister district's reasoning in *Havely* concerning the Supreme Court's decision in *Cramer* and the comparison of R.C 5123.64 to R.C. 3721.17(I) is compelling. Its decision that R.C. 5123.64 does not expressly impose liability is well reasoned and is persuasive. As such, we adopt its reasoning as our own and hold that R.C. 5123.64 does not expressly impose liability upon a public agency for the failure to perform the duties enumerated in R.C. 5123.62 and therefore, immunity is not removed under R.C. 2744.02(B)(5).

¶{50} Consequently, while the trial court erred in concluding that the complaint did not sufficiently plead a violation of R.C. 5123.62 and R.C. 5123.64, the trial court's determination that R.C. 2744.02(B)(5) did not strip Youngstown's immunity for any alleged violation under either of those statutes was correct. Thus, although this assignment of error has some merit, it does not require reversal.

SECOND AND THIRD ASSIGNMENTS OF ERROR

¶{51} "THE TRIAL COURT ERRED IN RELYING ON *JAMES V. CITY OF TOLEDO* TO MAKE ITS RULING ON WHETHER THE LICENSING OF A GROUP HOME IS A 'PROPRIETARY' OR 'GOVERNMENTAL' FUNCTION FOR THE PURPOSES OF STATUTORY IMMUNITY."

¶{52} "THE TRIAL COURT ERRED IN DETERMINING THAT THE LICENSING OF A GROUP HOME IS A 'GOVERNMENTAL' RATHER THAN 'PROPRIETARY' FUNCTION FOR THE PURPOSES OF STATUTORY IMMUNITY PURSUANT TO ORC § 2744."

¶{53} The second and third assignments of error are disposed of simultaneously because they both address the trial court's conclusion that Youngstown is immune from liability for any negligent action in licensing the group home because such action is a governmental function.

**¶{54}** As explained above, Youngstown enjoys a general grant of immunity under R.C. 2744.02(A) for governmental and proprietary functions. The parties agree that the only possible exception under R.C. 2744.02(B) that could strip the general grant of immunity for the common law claim of negligently granting a license to operate a group home is subsection (B)(2). That subsection provides:

**¶{55}** "(2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." R.C. 2744.02(B)(2).

**¶{56}** Thus, the key to our resolution of these assignments of error is whether licensing a group home is a governmental or proprietary function.

**¶{57}** R.C. 2744.01 provides lists of specific functions that are considered governmental and proprietary functions. R.C. 2744.01(C)(2) (list of governmental functions); R.C. 2744.01(G)(2) (list of proprietary functions). That statute also contains general definitions for governmental functions and proprietary functions so that if a function is not enumerated in either list, it can be determined whether such function is governmental or proprietary. R.C. 2744.01(C)(1) (general definition of governmental function); R.C. 2744.01(G)(1) (general definition of proprietary function).

**¶{58}** Starting with the specific lists of governmental and proprietary functions, neither R.C. 2744.01(C)(2) or (G)(2) expressly state that "licensing" or "licensing a group home" is a governmental or proprietary function. However, in its brief, Youngstown argues that licensing of a group home falls under either R.C. 2744.01(C)(2)(o) or (x).[2]

**¶{59}** We disagree. R.C. 2744.01(C)(2)(o) states that the "operation of mental health facilities, mental retardation or developmental disabilities facilities, alcohol treatment and control centers, and children's homes or agencies" are governmental functions. In the complaint, the estate acknowledged that the group home at 135 Illinois Ave., Youngstown, provided mental health services for adults. In contending that this section includes licensing a group home, it asserts that if the operation of the

---

[2]In its brief, Youngstown also argues that the alleged failure to inspect and revoke a license is a governmental function. It cites R.C. 2744.01(C)(2)(p) for that proposition. The estate argued at the trial court level that the alleged failure to inspect and revoke a license is a proprietary function. However, it does not make that argument in the appellate brief. Its argument instead focuses solely on whether the granting of the license is a governmental function. As such, Youngstown's argument concerning inspection and revocation of the license and subsection (p) is not addressed.

home is a governmental function than the licensing of the same is a governmental function. In support of this position Youngstown cites to *Butler v. Jordan* (Aug. 12, 1999), 8th Dist. No. 74509.

¶{60} In *Butler*, the Eighth Appellate District was reviewing a trial court's order finding that the Cuyahoga County Department of Human Services was immune from liability for its alleged negligent licensing of a day-care facility. The injured party in that case asserted that immunity was stripped by R.C. 2744.02(B)(2) and (5). The Eighth District found that the licensing of a day-care facility fell under R.C. 2744.01(C)(2)(m) which provides that the operation of a human services department or agency is a governmental function. Id. It explained that Black's Law Dictionary defines operation as "the process of operating or mode of action; an effect brought about in accordance with a definite plan; action; activity" and that licensing could be "considered an exertion of power or part of a process integral to human services." Id. It then stated that since the legislature in enacting R.C. 5104.11 required the human services department to be responsible for licensing or contracting with another agency for licensing of a day-care facility, it is part of the operation of a human services department. Id. Thus, immunity was not stripped by R.C. 2744.02(B)(2).[3]

¶{61} We do not find the *Butler* case to be controlling in this matter. Youngstown has failed to direct us to a statute in the Revised Code that is equivalent to R.C. 5104.11 that indicates that a City is responsible for licensing or contracting for licensing of group homes. There are statutes that require the health department, department of developmental disabilities, department of jobs and family services, department of mental health, or the directors of those departments to license certain homes. See R.C. 3721.02 (licensing of rest homes and nursing homes); R.C. 3722.04(A) (licensing adult care facilities); R.C. 5103.03 (licensing foster homes); R.C. 5119.20 (licensing of hospital for mentally ill); R.C. 5123.19(B) (licensing of residential facilities). Admittedly a group home could fit under the definition of a residential facility or an adult care facility, however, the statements in the complaint do not provide enough information to establish that it was either of those. See R.C. 3722.01(A)(9)

---

[3]The Eighth District also opined that R.C. 5104.11 imposed a mandatory duty on CCDHS, and thus, while immunity was not stripped by R.C. 2744.02(B)(2), it was stripped by R.C. 2744.02(B)(5). The portion of the opinion addressing R.C. 2744.02(B)(5) and its application to R.C. 5104.11 was overruled by the Ohio Supreme Court in *Butler v. Jordan* (2001), 92 Ohio St.3d 354. The analysis concerning R.C. 2744.02(B)(2), however, was not overruled.

(defining adult care facility); 5123.19(A)(1)(a) (defining residential facility). From the complaint, the most we can conclude is that the group home is licensed by the City of Youngstown. Therefore, we cannot find that R.C. 2744.01(C)(2)(o) clearly establishes that licensing a group home is a governmental function.

¶{62} Likewise, we also find no merit with Youngstown's argument that R.C. 2744.01(C)(2)(x), which states that a "function that the general assembly mandates a political subdivision to perform" clearly indicates that licensing a group home is a governmental function. The argument that this section applies is made for the first time on appeal and is not properly before this court. However, even if it were properly before us, it still lacks merit. As explained above, there is not enough information from the complaint to determine whether the General Assembly through the Revised Code requires a governmental body to license the group home in question. Although Youngstown has enacted its own ordinances for licensing a group home, that does not satisfy R.C. 2744.01(C)(2)(x) because that section specifically requires a mandate from the general assembly, not the city.

¶{63} Therefore, Youngstown has failed to establish, with only the information in the complaint, that R.C. 2744.01(C)(2)(o) or (x) apply and render the licensing of a group home a governmental function.

¶{64} But that does not mean that the licensing of a group home is a proprietary function, rather than a governmental function. In order to determine whether it is a proprietary or governmental function, we must look to the definition of governmental and proprietary functions in R.C. 2744.01(C)(1)(a)-(c) and (G)(1)(a)-(b). *Moore v. Lorain Metro. Hous. Auth.*, 121 Ohio St.3d 455, 2009-Ohio-1250, ¶11-12.

¶{65} "(C)(1) 'Governmental function' means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:

¶{66} "(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

¶{67} "(b) A function that is for the common good of all citizens of the state;

¶{68} "(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily

engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.

¶{69} "* * *

¶{70} "(G)(1) 'Proprietary function' means a function of a political subdivision that is specified in division (G)(2) of this section or that satisfies both of the following:

¶{71} "(a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;

¶{72} "(b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons." R.C. 2744.01(C)(1); R.C. 2744.01(G)(1).

¶{73} The Second Appellate District has recently noted that the simple difference between the definitions for proprietary and governmental functions in R.C. 2744.01(C)(1) and (G)(1) is that proprietary functions include activities customarily performed by nongovernmental persons whereas governmental functions are activities that are not customarily engaged in by nongovernmental persons. *Foland v. Englewood*, 2d Dist. No. 22940, 2010-Ohio-1905, ¶49.

¶{74} In determining whether a function is customarily engaged in by nongovernmental persons, the central consideration is the specific activity, not the general activity. *Greene Cty. Agricultural Soc. v. Liming,* 89 Ohio St.3d 551, 560, 2000-Ohio-486. Black's Law Dictionary provides two definitions for licensing. The first is "[t]he sale of a license authorizing another to use something (such as computer software) protected by copyright, patent or trademark." Black's Law Dictionary (4 Ed.2004) 940. The second is "[a] governmental body's process of issuing a license." Id. Given these two different definitions, it is clear that licensing in some instances may be a proprietary function, while in other instances it is a governmental function. For example, licensing software would fall under the first definition of licensing and would most likely be a proprietary function because it is not typically engaged in by governmental persons. Conversely, the licensing of lawyers and real estate agents is left to governmental bodies and is a governmental function. *Ohio State Bar Assn. v. Burdzinski, Brinkman, Czarzasty & Landwehr, Inc.*, 112 Ohio St.3d 107, 2006-Ohio-6511, ¶11 (indicating that licensing of lawyers has been left exclusively to the states); *Cerreta v. Ohio Dept. of Commerce*, 9th Dist. No. 2008 CA 00125, 2009-Ohio-1760, ¶86 (finding that the issuing of licenses for a real estate agent is a governmental

function). See, also, *Duncan v. Ohio State Liquor Control Comm.*, 10th Dist. No. 08AP-236, 2008-Ohio-4550, ¶16 (stating that issuing a liquor license is a governmental function). The above clearly indicates that licensing is not the specific activity, but rather is the general activity. Consequently, the issue before us is not whether licensing falls with in the definition of a governmental function or whether it falls within the definition of a proprietary function. Rather, the question is which definition, governmental or proprietary, does licensing a group home fall under.

¶{75} While there is not a case directly on point that licensing a group home is a governmental or proprietary function, the Sixth District has stated that the city cannot be held liable for damages in the granting or refusing to grant a building permit because that activity is a governmental function. *James v. City of Toledo* (1927), 24 Ohio App. 268, 271. The trial court relied on this case in finding that licensing a group home is a governmental function. However, as the estate points out, this case was decided before the enactment of R.C. Chapter 2744. The First Appellate District has recently stated that cases decided before the enactment of R.C. Chapter 2744 cannot be "relied upon for interpreting a statutory framework that would not exist until nearly half a century later." *Kenko Corp. v. Cincinnati,* 183 Ohio App.3d 583, 2009-Ohio-4189, ¶21. Or in other words, the *James* case is not conclusive evidence that the City issuing a license is a governmental function because the requirements in R.C. 2744.01(C)(1) need to be met for the licensing to be a governmental function. The *James* case, having been decided prior to the enactment of R.C. Chapter 2744, did not consider those requirements. Additionally, *James* is not directly on point because it dealt with issuing a building permit or license to build a house on a lot, it does not deal with issuing a license to operate a group home.

¶{76} That said, we find that licensing of group homes falls within the definition of a governmental function under R.C. 2744.01(C)(1). Issuing licenses for the operation of homes that provide supervision is an activity typically done by governmental persons. For instance, as stated above, R.C. 5123.19 indicates that the licensing of a residential facility for mentally retarded or developmentally disabled persons is typically the director of disabilities responsibility. R.C. 5123.19(B). The director of health is responsible for licensing an adult care facility, which is a residence that provides accommodation and supervision for unrelated adults. R.C. 3722.04(A); R.C. 3722.01(A)(9). Licensing of nursing homes and rest homes is done by the

director of health. R.C. 3721.02. The department of job and family services is responsible for licensing foster homes. R.C. 5103.03. The department of mental health is responsible for licensing all hospitals that receive mentally ill persons. R.C. 5119.20. As these examples show, facilities that are providing accommodation and supervision or treatment requires licensing by a government agency or person, which is a governmental function. Those examples are similar to the group home and support the conclusion that licensing the group home is a governmental function.

¶{77} Furthermore, we note that the fact that the general assembly has not specifically provided a statute for licensing "group homes" does not necessarily render the action a proprietary function. The Ohio Supreme Court has indicated that it is the action we look at, not whether it is legislatively imposed. *Greene,* 89 Ohio St.3d at 558. In fact, it noted that the performance of the governmental functions can be voluntarily taken on by the political subdivision. Id. Youngstown has enacted its own ordinances for group homes and regulation of them, thereby voluntarily taking on the governmental function.

¶{78} Admittedly, as the estate notes, the Ohio Supreme Court has stated that when a political subdivision's acts go beyond governmental functions, and when it acts in a proprietary nature, there is little justification for affording it immunity. Id. at 559. However, in this instance, there is nothing in the record to show that the City went beyond its governmental function.

CONCLUSION

¶{79} For the foregoing reasons, all assignments of error lack merit. The judgment of the trial court is hereby affirmed.

Waite, J., concurs.
DeGenaro, J., concurs.