[Cite as *Fediaczko v. Mahoning Cty. Children Servs.*, 2012-Ohio-6095.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| W. GORDON FEDIACZKO, ADM. OF THE ESTATE OF J.H., | ) ) ) | CASE NO.    11 MA 199 |
| PLAINTIFF-APPELLANT, | ) ) | |
| VS. | ) ) | O P I N I O N |
| MAHONING COUNTY CHILDREN SERVICES, et al., | ) ) ) | |
| DEFENDANTS-APPELLEES. | ) ) | |

CHARACTER OF PROCEEDINGS:       Civil Appeal from Common Pleas Court, Case No. 09CV1929.

JUDGMENT:       Affirmed.

APPEARANCES:
For Plaintiff-Appellant:       Attorney Shirley Smith
1399 East Western Reserve Rd., Suite 2
Poland, Ohio  44514

For Defendants-Appellees:       Attorney Daniel Downey
Attorney J. Quinn Dorgan
10 West Broad Street, Suite 2400
Columbus, Ohio  43215

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated: December 20, 2012

VUKOVICH, J.

{¶1} Plaintiff-appellant W. Gordon Fediaczko, the administrator of the child's estate, appeals the decision of the Mahoning County Common Pleas Court granting immunity to Mahoning County Children's Services and the Mahoning County Children's Services Board. The child's estate argues that there is an exception to statutory immunity here, alleging that civil liability is expressly imposed under another statute outlining an exception to *state* immunity where a special relationship can be established between the state and the injured party.

{¶2} However, the definition sections of the relevant statutes differentiate between the state and a political subdivision. The statute lifting immunity where there is a special relationship deals only with the *State of Ohio's* waiver of immunity and does not apply to a *political subdivision* such as the county, its agencies, and its boards. Therefore, the argument presented by the child's estate is without merit. For the reasons expressed below, the judgment of the trial court is hereby affirmed.

## STATEMENT OF THE CASE

{¶3} J.H. was born in December of 1985. When his parents divorced in 1991, his mother received custody. The child lived with his mother in her native country of Japan for some time. She later had troubles with the child and sent him back to Youngstown to live with his father. Citing multiple behavioral problems, the father stated that he could not care for the child. At the recommendation of the agency, temporary custody was granted to a friend of the mother in March of 2000. This custodian informally relinquished custody in August of 2000.

{¶4} The father again refused custody, and the child began living with Jennifer Snyder, who was a relative of the father through marriage, and David Sharpe, who was Jennifer Snyder's boyfriend. Caseworker Erin Davis began a home study and investigation in regards to Jennifer Snyder and David Sharpe. She filed her report and recommended Jennifer Snyder as custodian. In October of 2000, the juvenile court granted legal custody of the child to both Jennifer Snyder and David Sharpe, and the agency closed its case.

{¶5}   In December of 2000, an anonymous caller reported to the agency that David Sharpe used drugs and that the child had been frightened when a drug dealer came to the house demanding money.  An agency worker interviewed David Sharpe and the child, and he found no evidence of abuse or neglect.

{¶6}   On June 14, 2001, the agency was informed by a caller that David Sharpe had been arrested two days before for abusing Jennifer Snyder and the child. Someone from the agency contacted the responding police officers and learned that the offense did not involve the child.

{¶7}   On June 18, 2001, the former temporary custodian called the agency to report that the child was being abused by David Sharpe, that he had been locking the child in the basement, and that the mother was concerned as she had not been able to contact the child.  Caseworker Kim Vechiarelli was assigned to the case.  On August 6, 2001, she reported that she conducted a face-to-face interview with the child and the custodians and claimed that the child said he was happy and well-treated.  It was not discovered until 2007 that this report was false and that she had never interviewed any of the parties.

{¶8}   According to Jennifer Snyder's 2007 recollection, David Sharpe had killed the child on June 15 or 16, 2001.  Both Jennifer Snyder and David Sharpe were then indicted for various offenses.  Thereafter, Jennifer Snyder pled guilty to endangering a child (lowered from permitting abuse of child) and gross abuse of a corpse.  David Sharpe pled to reckless homicide (lowered from murder), gross abuse of a corpse, and attempted tampering with evidence.

{¶9}   The child's estate filed an action against the agency, the board, a supervisor no longer at issue, Executive Director Denise Stewart, and Caseworkers Erin Davis and Kim Vechiarelli.  Jennifer Snyder and David Sharpe were also named as defendants.  The complaint alleged vicarious liability, improper screening, placement, and monitoring, falsification of reports, negligence per se, negligent hiring and supervision, misrepresentation and detrimental reliance, and wrongful death.

{¶10}  The county and its employees moved for summary judgment asserting statutory immunity.  On November 2, 2011, the trial court granted summary judgment

in favor of the agency and the board on the grounds of immunity, granted summary judgment for the aforementioned supervisor on grounds that no liability was established, and refused to grant summary judgment for the executive director and the two caseworkers on their immunity claim, finding that genuine issues of material fact remained as to whether they acted recklessly.

{¶11} The executive director and two caseworkers filed an appeal from the denial of immunity, which was appealable under R.C. 2744.02(C). Said appeal resulted in 7th Dist. Case No. 11MA186. At that point, the child's estate filed an appeal from the grant of immunity to the agency and board, which resulted in the appeal at bar. This court found the grant of immunity final and appealable after the child's estate was successful in petitioning the trial court to add "no just reason for delay" language to its judgment entry. *See* Civ.R. 54(B) (when more than one claim for relief is presented or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay). *See also Winsintainer v. Edcen Power Strut Co.*, 67 Ohio St.3d 352, 617 N.E.2d 1136 (1993) (if all of the causes of actions between appellant and one of the parties are resolved by the summary judgment, then the trial court can use discretion to determine if judicial economy is served by appeal of that summary judgment).

ASSIGNMENT OF ERROR

{¶12} Appellant's sole assignment of error provides:

{¶13} "The trial court abused its discretion and held against the manifest weight of the evidence in granting the motion for summary judgment filed by the Mahoning County Children Services Agency and the MCCS Board. The trial court did not give proper consideration to the exemptions to the immunity statute including but not limited to the 'special relationship' exemption defined in O.R.C. 2743.02(A)(3)(b), under which it is clear that immunity does not apply, and further disregarded the numerous issues of material fact remaining to be litigated regarding said special relationship."

{¶14} As the county points out, the standard for reviewing the trial court's grant of summary judgment is de novo, not abuse of discretion or manifest weight of the evidence as the text of the assignment of error suggests. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 767 N.E.2d 707, 2002-Ohio-2220, ¶ 24. Summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C). We are presented with a threshold question of statutory interpretation that is purely a matter of law.

{¶15} The general rule regarding political subdivision immunity is that the political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or its employee in connection with a government or proprietary function. R.C. 2744.02(A). Only five exceptions to the general immunity of a political subdivision are provided. R.C. 2744.02(B)(1)-(5).

{¶16} The sole exception claimed to be applicable here is (B)(5). This exception provides in pertinent part that a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a statutory section including but not limited to R.C. 2743.02. R.C. 2744.02(B)(5).

{¶17} The child's estate focuses on this statutory reference to R.C. 2743.02 and urges that R.C. 2743.02 expressly imposes civil liability on the political subdivision. This statute begins by declaring: "The *state* hereby waives its immunity from liability * * * and consents to be sued, and have its liability determined, in the court of claims created in this chapter * * * except as provided in division (A)(2) or (A)(3) of this section." (Emphasis added). R.C. 2743.02(A). The child's estate then moves to division (A)(3), which provides:

{¶18} "(3)(a) Except as provided in division (A)(3)(b) of this section, *the state* is immune from liability in any civil action or proceeding involving the performance or

nonperformance of a public duty, including the performance or nonperformance of a public duty that is owed by the state in relation to any action of an individual who is committed to the custody of the state.

**{¶19}** "(b) *The state* immunity provided in division (A)(3)(a) of this section does not apply to any action of *the state* under circumstances in which a special relationship can be established between *the state* and an injured party. A special relationship under this division is demonstrated if all of the following elements exist: (i) An assumption by *the state*, by means of promises or actions, of an affirmative duty to act on behalf of the party who was allegedly injured; (ii) Knowledge on the part of *the state's agents* that inaction of *the state* could lead to harm; (iii) Some form of direct contact between *the state's agents* and the injured party; (iv) The injured party's justifiable reliance on *the state's* affirmative undertaking." (Emphasis added). R.C. 2743.02(A)(3).

**{¶20}** The child's estate argues that the county agency and county board clearly had a special relationship with the child as all of the four elements are satisfied. The child's estate thus urges that "civil liability is expressly imposed upon the political subdivision" by R.C. 2743.02(A)(3)(b) and thus the exception to immunity in R.C. 2744.02(B)(5) applies.

**{¶21}** The county responds that, regardless of any factual issues as to whether a special relationship existed, R.C. 2743.02 only pertains to the *State of Ohio's* waiver of immunity for special relationship claims, and there is no similar provision for political subdivisions such as the county and its agencies or boards.

**{¶22}** As the county points out, the exception in R.C. 2744.02(B)(5) requires a statute to expressly impose liability upon *the political subdivision*. To the contrary, R.C. 2743.02(A)(1) and (A)(3) discuss *the state's* waiver of immunity and the exception to *state* immunity where there exists a special relationship. The definition statute in Chapter 2743 specifically distinguishes a political subdivision from the state as follows:

**{¶23}** "(A) 'State' means the state of Ohio, including, but not limited to, the general assembly, the supreme court, the offices of all elected state officers, and all

departments, boards, offices, commissions, agencies, institutions, and other instrumentalities of the state. **'State' does not include political subdivisions.**

**{¶24}** "(B) 'Political subdivisions' means municipal corporations, townships, counties, school districts, and all other bodies corporate and politic responsible for governmental activities only in geographic areas smaller than that of the state to which the sovereign immunity of the state attaches." (Emphasis added). R.C. 2743.01(A), (B).

**{¶25}** The definition statute in the political subdivision immunity chapter reiterates this distinction between the statutory use of the label "state" and the use of the label "political subdivision." R.C. 2744.01(F), (I). Thus, civil liability is not expressly imposed against the political subdivision by R.C. 2743.02(A)(3)(b) as such statute does not involve a political subdivision but only applies to those entities falling under the definition of "state."

**{¶26}** In response to a suggestion by appellant that there must be a reason for the reference to R.C. 2743.02 within the political subdivision immunity exception of R.C. 2744.02(B)(5), we point to division (B) of R.C. 2743.02. This division declares that the state waives immunity from liability of all hospitals owned or operated by one or more *political subdivisions* and consents for them to be sued. R.C. 2743.02(B). This explains the reference to R.C. 2743.02 in the political subdivision immunity statute. *See id.* In fact, the Supreme Court has explained the exception in (B)(5) by stating that the political subdivision is liable when civil liability is expressly imposed upon the political subdivision "by a section of the Revised Code, including, but not limited to, sections 2743.02 [hospitals] and 5591.37 [guardrails] of the Revised Code." *Moore v. Lorain Metro. Hsg. Auth.*, 121 Ohio St.3d 455, 2009-Ohio-1250, 905 N.E.2d 606, ¶ 21. By adding "hospitals" in braces after R.C. 2743.02, the Court recognized the portion of R.C. 2743.02 applicable to political subdivisions. *See id.*

**{¶27}** We also note here that the Supreme Court recently stated that a special relationship is not an exception to a public children's services immunity under R.C. 2744.02(B). *Rankin v. Cuyahoga Dept. of Children & Family Servs.*, 118 Ohio St.3d

392, 889 N.E.2d 521, 2008-Ohio-2567, ¶ 32-33.  Although the Court did not specifically refer to R.C. 2743.02, that statute is directly cited in R.C. 2744.02(B)(5), which the Supreme Court did consider.  *Id.* at ¶ 29.

{¶28}  In conclusion, the plain language of the statutes cited demonstrates that the special relationship referred to in R.C. 2743.02(A)(3)(b) is relevant only to lift the state's immunity and is not relevant to lift a political subdivision's immunity.  Consequently, summary judgment was properly granted to the county agency and the county board as no exception to political immunity applied.

{¶29}  For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
DeGenaro, J., concurs.