[Cite as *Mocznianski v. Ohio Dept. of Medicaid*, 2020-Ohio-165.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Terrence L. Mocznianski, | : | |
| Appellant-Appellant, | : | |
| | | No. 18AP-894 |
| v. | : | (C.P.C. No. 18CV-4855) |
| Ohio Department of Medicaid, | : | (REGULAR CALENDAR) |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on January 21, 2020

**On brief:** *The DuBose Law Firm, LLC,* and *Shakeba DuBose*, for appellant. **Argued:** *Shakeba DuBose.*

**On brief:** *Dave Yost*, Attorney General, *Stephanie Deters*, and *Roger Carroll*, for appellee. **Argued:** *Stephanie Deters.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Appellant, Terrence L. Mocznianski, appeals the October 31, 2018 decision and entry of the Franklin County Court of Common Pleas, which affirmed the May 24, 2018 final adjudication order issued by appellee, Ohio Department of Medicaid ("ODM"). For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} This matter arises out of a determination that appellant had been overpaid for services he provided as caregiver to his disabled sibling. On February 22, 2017, the Ohio Department of Developmental Disabilities ("ODDD") sent appellant, by certified mail, a notice of overpayment and request for voluntary repayment. In the notice, ODDD advised appellant it had completed a Home and Community-Based Services Medicaid waiver

review ("waiver review") of his services for the period from July 1, 2011 through June 30, 2014. Pursuant to R.C. 5164.58(B)(1) and Ohio Adm.Code 5160-71-02(A), ODDD requested appellant make a voluntary repayment in the amount of $94,293.76, in addition to accrued interest in the amount of $9,377.71 and daily interest in the amount of $9.69 from the date of the notice until receipt of payment. On March 20, 2017, appellant sent a letter to ODDD disputing the alleged overpayment.

{¶ 3} On April 26, 2017, ODDD sent appellant notice of intended action and opportunity for hearing. In the notice, ODDD stated that, because it had been unable to secure voluntary repayment or enter into a negotiated settlement, it was proposing the director of ODM issue an adjudication order finding appellant received an overpayment. On May 22, 2017, appellant sent a letter disputing the proposed adjudication order and requesting a hearing pursuant to R.C. Chapter 119.

{¶ 4} On March 6, 2018, an ODDD hearing examiner held a hearing on the matter. At the hearing, Halina Schroeder, audit chief of ODDD, testified she supervised the ODDD employees who conducted the Medicaid waiver review of appellant's services. Schroeder explained that Medicaid waiver reviews are reviews of claims billed by and paid to Medicaid providers for services to individuals with developmental disabilities. In the review, ODDD employees ensure providers have submitted service documentation validating the nature and extent of services provided in compliance with the requirements in the Ohio Administrative Code.

{¶ 5} Schroeder testified that auditors utilize a risk-based approach when selecting providers for review. Appellant was selected under this approach because he was a highly paid provider who was providing a significant number of hours consistently throughout the waiver review period, which encompassed July 1, 2011 through June 30, 2014. Auditors conducted the review on the first month of each quarter of the review period. Schroeder testified that appellant, during the review period, provided "homemaker/personal care" to his sibling, who lived with him. During the review period, appellant received a total of $283,270.00 for 69,600 units of service, each of which comprised a 15-minute billing period.

{¶ 6} According to Schroeder, an ODDD auditor, on September 16, 2016, sent appellant a waiver review notification letter informing him that he had been selected for a

waiver review. The ODDD auditor requested from appellant service documentation corresponding to the waiver review time period. The ODDD auditor also requested from the Lucas County Board of Developmental Disabilities ("LCBDD"), the county-level agency responsible for providing training to providers and completing review processes on behalf of ODDD, documentation for the relevant time period. Thereafter, another ODDD auditor reviewed the documentation and made findings that were incorporated into a report.

{¶ 7} According to Schroeder, on February 22, 2017, ODDD sent by certified mail a notice, which was admitted into the record, to appellant of the completion of the waiver review report. ODDD attached to the notice the waiver review report in addition to relevant statutory and administrative code provisions. ODDD also attached to the notice an invoice and a request for voluntary repayment of the overpayment.

{¶ 8} Schroeder testified that, ODDD, in the waiver review report, found there were 23,168 units of provided service that were undocumented or unsupported in violation of the applicable provisions of the Ohio Administrative Code, resulting in an overpayment amount of $94,293.76, plus interest. In the waiver review report, ODDD specifically found that the service documentation lacked the following: (1) "Number of Units of Delivered Service (APC)"; (2) "Arrival and Departure Times (APC, through 4/18/12)"; and (3) "Begin and End Times of Delivered Service (APC, effective 4/19/12)." (ODDD Hearing, State's Ex. 15 at 14.)[1]

{¶ 9} Schroeder testified that without the inclusion of the number of units on the service documentation "it's difficult to determine whether or not the correct number of units was billed and/or determine how many units of service were actually provided." (Mar. 6, 2017 Tr. at 22.) Schroeder further testified that appellant was not authorized to provide 24-hour service, because the "individual service plan specifically stated that natural supports were also to be provided to the individual, and 'natural supports' is when family or friends provide * * * care for the individual as a normal course of [the] family unit." (Mar. 6, 2017 Tr. at 31-32.) Schroeder stated that natural supports were not eligible for payment.

---

[1] We note that the February 22, 2017 notice identified "APC" as the "service code" for "Homemaker Personal Care." (State's Ex. 15 at 1.)

{¶ 10} Schroeder testified that after the waiver review report was sent to appellant, ODDD provided appellant with an opportunity to submit additional documentation. Appellant did not submit any additional service documentation but, instead, provided documentation that he claimed showed the LCBDD had informed him that his documentation was acceptable. However, the documentation provided by appellant did not alter the findings because it was either outside the applicable review period or did not relate to the missing information from appellant's service documentation.

{¶ 11} According to Schroeder, LCBDD was responsible for completing compliance reviews for ODDD's Office of Provider Standards and Review. Schroeder stated that compliance reviews did not serve the same purpose as the audits performed for waiver reviews because LCBDD did not review "the documentation to any claims paid or any billing submitted by the providers." (Mar. 6, 2017 Tr. at 38.) Furthermore, unlike waiver reviews, the compliance reviews did not involve the issuance of recoverable findings and typically only covered a three-month period of the provider's documentation. As a result, the compliance reviews were not determinative of the findings made under a waiver review. Schroeder stated that the "county boards are responsible for assisting providers and providing training as designated by [ODDD], but ultimately it's the provider's responsibility to be compliant and knowledgeable of the rules in relation to the services that they're providing and being paid for." (Mar. 6, 2017 Tr. at 38.)

{¶ 12} Schroeder testified that, during the waiver review process, waiver review auditors found LCBDD, on behalf of the ODDD Office of Provider Standards and Review, completed a compliance summary report of appellant's service documentation. In the compliance summary report, which was dated September 19, 2012 within the review period, the LCBDD reviewer found appellant was not aware he had to include the number of units of provided service. Appellant was also not aware that he was required to provide the arrival and departure times. In the report, the reviewer indicated that appellant would, beginning October 17, 2012, revise his documentation to comply with the applicable rules by including the place of service, group size, number of units of provided service, and the beginning and end times of the provided service.

{¶ 13} Appellant did not appear at the hearing but, instead, submitted written arguments and documents, which were admitted into the record and considered by the

hearing examiner. On March 20, 2018, the ODDD hearing examiner issued a report and recommendation, recommending the director of ODM issue an adjudication order of overpayment to appellant in the amount of $94,293.76, in addition to accrued interest in the amount of $15,635.97 and daily interest in the amount of $11.63. On April 4, 2018, appellant filed an objection to the hearing examiner's report and recommendation. On May 24, 2018, the director of ODM issued an adjudication order finding appellant received an overpayment in the amount of $94,293.76, in addition to interest as set forth in the hearing notice.

{¶ 14} On June 7, 2018, appellant appealed to the common pleas court. On October 31, 2018, after being fully briefed by the parties, the common pleas court filed its decision and entry affirming the May 24, 2018 decision of the ODM director.

## II. Assignments of Error

{¶ 15} Appellant appeals and assigns the following two errors for our review:

> [I.] The Franklin County Court of Common Pleas erred in finding that Mr. Mocznianski's due process rights were not violated when the Hearing Examiner erroneously attributed evidence to Mr. Mocznianski and then drew improper inferences from said evidence.

> [II.] The Franklin County Court of Common Pleas erred in failing to determine that estoppel applies against the State in this instance where the record demonstrates that the State uses terms interchangeably and where agents of the State provide guidance that conflicts with applicable administrative rule requirements.

For ease of discussion, we consider appellant's assignments of error out of order.

## III. Analysis

{¶ 16} In his assignments of error, appellant asserts the common pleas court erred in affirming the ODM director's final adjudication order requiring appellant to repay the Medicaid overpayment. We begin by reviewing the applicable law and precedent.

## A. Applicable Law

{¶ 17} R.C. 5164.58 provides state agencies in contract with ODM for the administration of components of the Medicaid program with the authority to commence

actions to recover Medicaid overpayments made to a Medicaid provider.[2]  In recovering an overpayment pursuant to R.C. 5164.58, the state agency must first attempt to obtain recovery of the overpayment by notifying the Medicaid provider of the overpayment and requesting voluntary repayment.  R.C. 5164.58(B)(1).  If the state agency is unable to obtain voluntary repayment, the state agency must provide the Medicaid provider with notice of an opportunity for a hearing in accordance with R.C. Chapter 119.  R.C. 5164.58(B)(2).  If the Medicaid provider timely requests a hearing, the state agency must conduct the hearing and then transmit its hearing officer's report and recommendation to the ODM director for final adjudication.  R.C. 5164.58(B)(2).

{¶ 18} Here, the period of time relevant to this appeal, namely the waiver review period from July 1, 2011 through June 30, 2014, encompasses multiple revisions to the controlling administrative code provisions.  Former Ohio Adm.Code 5123:2-9-05, effective from the beginning of the waiver review period until April 19, 2012, provided that the purpose of the rule was to "set[] forth the requirements of the information that must be maintained by the provider of services in order to fully disclose the nature and extent of the services delivered" by Medicaid providers. Former Ohio Adm.Code 5123:2-9-05(A). Furthermore, former Ohio Adm.Code 5123:2-9-05(B) provided in pertinent part as follows:

> "Service documentation" means the maintenance of all records and information on one or more documents, including documents that can be printed from electronic software programs, in such a manner as to fully disclose the nature and extent of the services delivered and must include each of the following items to validate medicaid reimbursement:
>
> * * *
>
> (9) Number of units of the delivered service or continuous amount of uninterrupted time during which the service was provided;
>
> (10) Group size in which the services were delivered as defined in paragraph (D)(12) of rule 5123:2-9-06 of the Administrative Code;

---

[2] *See* R.C. 5162.35 (providing authority for ODM to enter into contracts with other state agencies or political subdivisions to administer components of the Medicaid program); R.C. 5164.57 (providing for recovery by ODM of Medicaid overpayments).

> (11)  Arrival and departure times of the provider of service's site visit to the recipient's location or of the recipient's visit to the provider of service's location[.]

{¶ 19} Former Ohio Adm.Code 5123:2-9-30, as effective between April 19, 2012 and the end of the waiver review period,[3] provided that its purpose was to "define homemaker/personal care and set forth provider qualifications, requirements for service delivery and documentation of services, and payment standards for the service."  Former Ohio Adm.Code 5123:2-9-30(A).  Furthermore, former Ohio Adm.Code 5123:2-9-30 provided in pertinent part as follows:

> (B)(20)  "Service documentation" means all records and information on one or more documents, including documents that may be created or maintained in electronic software programs, created and maintained contemporaneously with the delivery of services, and kept in a manner as to fully disclose the nature and extent of services delivered that shall include the items delineated in paragraph (E) of this rule to validate payment for medicaid services.
>
> * * *
>
> (E) Service documentation for homemaker/personal care shall include each of the following to validate payment for medicaid services:
>
> * * *
>
> (9)  Group size in which the service was provided.
>
> * * *
>
> (11)  Number of units of the delivered service or continuous amount of uninterrupted time during which the service was provided.
>
> (12)  Begin and end times of the delivered service.

## B. Standard of Review

{¶ 20} In an administrative appeal under R.C. 119.12, a common pleas court "may affirm the order of the agency complained of in the appeal if it finds, upon consideration of

---

[3] Although not relevant to the disposition of this matter, we note that former Ohio Adm.Code 5123:2-9-30 was amended twice during the relevant time period, once effective September 1, 2013 and again on January 1, 2014.

the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12(M). *See Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619 (1993). To be "reliable," evidence must be dependable and true within a reasonable probability. *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992). *See also Rupert v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 17AP-173, 2017-Ohio-8377, ¶ 9. To be "probative," evidence must be relevant or, in other words, tend to prove the issue in question. *Id.* To be "substantial," evidence must have importance and value. *Id.* "[A]n administrative appeal to the common pleas court does not provide a trial de novo, but rather 'the Court of Common Pleas must give due deference to the administrative resolution of evidentiary conflicts.' " (Internal citations omitted.) *Capital Care Network of Toledo v. Ohio Dept. of Health*, 153 Ohio St.3d 362, 2018-Ohio-440, ¶ 25, quoting *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-11 (1980).

{¶ 21} The standard of review for a court of appeals in an administrative appeal is even more limited. As to factual issues, we must determine whether the common pleas court abused its discretion. *Avalon Resort & Spa LLC v. State Unemp. Comp. Rev. Comm.*, 10th Dist. No. 18AP-212, 2018-Ohio-4294, ¶ 20, citing *Miracle Home Health Care, LLC v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 12AP-318, 2012-Ohio-5669, ¶ 18. An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). However, when determining whether the agency's decision was in accordance with law, we exercise plenary review. *Avalon* at ¶ 20, citing *BNA Constr., Ltd. v. Dir. of Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 16AP-317, 2017-Ohio-7227, ¶ 25, citing *BRT Transp., LLC v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 14AP-800, 2015-Ohio-2048, ¶ 15.

**C. Second Assignment of Error—Whether Estoppel Applies**

{¶ 22} In his second assignment of error, appellant asserts the common pleas court erred in affirming the final adjudication order because county and state agents had previously assured him that his service documentation was adequate. Although appellant only frames his arguments regarding estoppel in general terms, he relies on cases involving both equitable and promissory estoppel in support of his arguments.

{¶ 23} The doctrines of equitable and promissory estoppel, while related, contain distinctions. Under the doctrine of equitable estoppel, " 'a representation of past or existing fact made to a party who relies upon it reasonably may not thereafter be denied by the party making the representation if permitting the denial would result in injury or damage to the party who so relies.' " *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, ¶ 20, quoting 4 R. Lord, Williston on Contracts, Section 8:3, 28-31 (4th Ed.1992). " 'The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice.' " *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, ¶ 43, quoting *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145 (1990). " 'A prima facie case of equitable estoppel requires proof of (1) a factual representation that, (2) is misleading, (3) induces actual reliance that is reasonable and in good faith, and (4) causes detriment to the relying party.' " *Garb-Ko, Inc. v. Benderson*, 10th Dist. No. 12AP-430, 2013-Ohio-1249, ¶ 17, quoting *Hudson v. Petrosurance, Inc.*, 10th Dist. No. 08AP-1030, 2009-Ohio-4307, ¶ 38, citing *Ruch v. Ohio Dept. of Transp.*, 10th Dist. No. 03AP-1070, 2004-Ohio-6714, ¶ 14.

{¶ 24} Promissory estoppel is defined as " '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' " *Hortman* at ¶ 23, quoting 1 Restatement of the Law 2d, Contracts, Section 90, at 242 (1981). In order to establish a claim for promissory estoppel, the party must prove " '(1) a clear, unambiguous promise, (2) that the person to whom the promise was made relied on the promise, (3) that reliance on the promise was reasonable and foreseeable, and (4) that the person claiming reliance was injured as a result of reliance on the promise.' " *Garb-Ko* at ¶ 18, quoting *Ford Motor Credit Co. v. Ryan*, 189 Ohio App.3d 560, 2010-Ohio-4601, ¶ 96 (10th Dist.), citing *Pappas v. Ippolito*, 177 Ohio App.3d 625, 2008-Ohio-3976, ¶ 55 (8th Dist.). *See Malempati v. Indep. Inpatient Physicians, Inc.*, 10th Dist. No. 12AP-565, 2013-Ohio-3543, ¶ 25. "Thus, the key distinction between the two doctrines [of promissory and equitable estoppel] is whether the estoppel arises from a promise and not a misstatement of fact." *Hortman* at ¶ 24.

{¶ 25} The Supreme Court of Ohio has held that "as a general rule, the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental

function." *Frantz* at 145-46. *See Hortman* at ¶ 25 (holding that "the doctrines of equitable estoppel and promissory estoppel are inapplicable against a political subdivision when the political subdivision is engaged in a governmental function"); *Sun Refining & Marketing Co. v. Brennan*, 31 Ohio St.3d 306, 307 (1987). Underlying this general rule is the rationale that "[a] properly functioning government cannot tolerate individual state actors binding the state to actions that exceed or contravene its authority." *Ohio Assn. of Pub. School Employees v. School Employees Retirement Sys. Bd.*, 10th Dist. No. 04AP-136, 2004-Ohio-7101, ¶ 49.

{¶ 26} Here, pursuant to the authority granted by R.C. 5164.58, ODDD was performing a government function by identifying a Medicaid overpayment to a provider and commencing an action to recover the overpayment. *See Cook v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 14AP-852, 2015-Ohio-4966, ¶ 38. Appellant does not contest that ODDD and ODM were acting in a governmental function in this matter but, instead, provides citation to two cases in arguing that an exception to the general rule applies.

{¶ 27} First, appellant cites to *Ormet Corp. v. Lindley*, 69 Ohio St.2d 263 (1982), a per curiam decision of the Supreme Court of Ohio, in which the court applied an exception to the general rule that estoppel " 'does not apply against the state *with regard to a taxing statute*.' " (Emphasis added.) *Ormet* at 265, quoting *Am. Handling Equip. Co. v. Kosydar*, 42 Ohio St.2d 150, 153 (1975). In *Ormet*, the court considered whether equitable estoppel operated to prevent the state from assessing taxes retroactively upon activities that, for a period of over 20 years, had been found by a named tax agent to be exempt from taxation. As rationale for applying an exception, the court stated that " 'where a long-established practice has been followed, such administrative practice does have much persuasive weight.' " *Id.* at 266, quoting *Recording Devices v. Bowers*, 174 Ohio St. 518, 520 (1963).

{¶ 28} Importantly, the exception in *Ormet* was specifically recognized with regard to a "taxing statute." *Id.* at 265. As a result, we find *Ormet* to be distinguishable from the facts in this case. Nonetheless, even if we were to consider the evidence presented by appellant, he fails to demonstrate a longstanding administrative practice of the kind found in *Ormet*.

{¶ 29} In his brief before this court, appellant specifically points to two communications he allegedly received from county and state agents on October 12, 2015

and November 4, 2016. Appellant contends these communications demonstrate assurances on the part of county and state agents that his documentation was in compliance with the applicable provisions of the administrative code. Appellant argues that "the fact that he has been told these things as recent as October 2015 and November 2016, supports that county agents acting on behalf of the state agency have said the same or similar things over the past 13 years." (Appellant's Brief at 31.) Contrary to appellant's contention, nothing in the record supports that the practice predated the documents on which appellant relies. Indeed, the provider compliance review dated September 19, 2012 and testimony from Schroeder about the same provides evidence that appellant had been previously informed his documentation was not in compliance with applicable administrative code provisions. Thus, the administrative practice in *Ormet*, which continued unchallenged for over 20 years, cannot be considered comparable to the period in this matter. *Ormet* at 266. Therefore, because appellant has failed to demonstrate a longstanding administrative practice, we cannot find the exception in *Ormet* applies in the present case. *Weiss v. Limbach*, 64 Ohio St.3d 79, 81 (1992); *Besl Corp. v. Pub. Util. Comm.*, 45 Ohio St.2d 146, 150 (1976); *Cleveland State Univ. v. Cleveland Elec. Illum. Co.*, 8th Dist. No. 52689 (Oct. 15, 1987).

{¶ 30} Next, appellant cites to our decision in *Pilot Oil Corp. v. Ohio Dept. of Transp.*, 102 Ohio App.3d 278 (10th Dist.1995), in which we found that "promissory estoppel applies against the state" where "the state had full opportunity to make an informed decision" and "(1) the state uses its discretion in the interpretation of a law or rule, (2) the state's interpretation is not violative of legislation passed by the General Assembly of Ohio, and (3) the elements of promissory estoppel are otherwise met." *Pilot Oil* at 283. Here, appellant fails to meet the third listed requirement of *Pilot Oil* because he fails to demonstrate that a state agent made "a clear, unambiguous promise," an element of promissory estoppel. *Garb-Ko* at ¶ 18. Appellant's claims that ODDD and ODM "waive the applicability of certain rules and use certain terms interchangeably" are not sufficient to demonstrate a clear, unambiguous promise. (Appellant's Brief at 30-31.) As a result, appellant cannot meet the requirements for application of the doctrine of promissory estoppel and we cannot find that the exception in *Pilot Oil* applies in this case. *Kistler v. Conrad*, 10th Dist. No. 04AP-1095, 2006-Ohio-3308, ¶ 28 (finding that Ohio Bureau of

Workers' Compensation's "certification of appellee was not a promise of continued certification").

{¶ 31} Accordingly, we overrule appellant's second assignment of error.

**D. Whether Appellant's Due Process Rights Were Violated**

{¶ 32} In his first assignment of error, appellant asserts the common pleas court erred in affirming the final adjudication order because his due process rights were violated by the hearing examiner's erroneous attribution of evidence to appellant in the fourth finding of fact in the hearing examiner's report and recommendation. Appellant contends that he was prejudiced by the errors in the fourth finding of fact and improper inferences drawn therefrom.

{¶ 33} The hearing examiner, in the fourth finding of fact in the March 20, 2018 report and recommendation, stated:

> Appellant further submitted a summary report of a provider compliance review on September 19, 2012, during the review period. Technical assistance was given to Appellant regarding service delivery documentation. Appellant submitted a plan of compliance which states: "As of 10/17/12, revised H/PC documentation sheet will be implemented. Place of Service, Group Size, Number of units of the delivered service and begin and end times of the delivered service will be documented according to rule." (State's Exhibit 14, p. 2)

(Report & Recomm. at 15-16.) Appellant contends this finding of fact was in error because ODDD submitted the September 19, 2012 summary report into evidence, not appellant. Furthermore, appellant contends an agent of the state completed the September 19, 2012 summary report, not appellant. Appellant also contends there was no evidence that technical assistance was given to appellant or that appellant submitted a plan of compliance.

{¶ 34} The common pleas court found the misattribution of the submission to appellant was not a violation of due process because it "could be a mere scrivener[']s error and nothing more." (Decision at 7.) The trial court also found there was no internal inconsistency in the findings of the hearing examiner as a result of the hearing examiner's consideration of ODDD's exhibit 14.

{¶ 35} On review, it is clear the hearing examiner erred in stating in the fourth finding of fact that appellant submitted the September 19, 2012 summary report. This

statement by the hearing examiner is contradicted in the same finding of fact by the hearing examiner's citation of "State's Exhibit 14." (Report & Recomm. at 16.) Additionally, the hearing examiner listed the "[c]opy of Appellant's 2012 provider compliance review and plan of compliance" under "State's Exhibits" in a list of the documentary evidence considered. (Report & Recomm. at 13.)

{¶ 36} However, regardless of any error resulting from the fourth finding of fact in the hearing examiner's report, appellant cannot demonstrate prejudice. The hearing examiner ultimately found the evidence related to provider compliance reviews was not determinative of the matter. Instead, the hearing examiner found the ultimate issue was "whether the appellant's documentation is sufficient to support the claim or claims for payment according to the requirements of the [applicable administrative code provisions]." (Report & Recomm. at 18.) The hearing examiner concluded that appellant's "fail[ure] to indicate the number of units or the beginning and ending times of service, or to indicate '24 hours,' is insufficient to meet the requirement of the rule, because part of the services authorized in the ISP are 'natural supports,' which are not reimbursable." (Report & Recomm. at 18.)

{¶ 37} Evidence in the record reflects that appellant failed to properly provide in his service documentation the number of units of service in compliance with both former Ohio Adm.Code 5123:2-9-05 and 5123:2-9-30. Furthermore, insofar as appellant listed the units of service as 24-hours in the service documentation, ODDD introduced testimony that such measurement was not in accordance with the requirements of both former Ohio Adm.Code 5123:2-9-05 and 5123:2-9-30. Specifically, Schroeder testified that appellant was not authorized to provide 24-hour care because the service plan required "natural supports," which were not eligible for payment. (Mar. 6, 2017 Tr. at 31.) Thus, the common pleas court did not err in finding there was sufficient reliable, probative, and substantial evidence in the record to support the final adjudication order.

{¶ 38} As a result, we find any error related to the fourth finding of fact in the hearing examiner's report to be harmless. *See Conrad* at 111 (finding that a court of common pleas may reverse an administrative decision where it "determines that there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body, and *necessary to its determination*") (Emphasis added.); *Woodford v. Ohio Real Estate*

*Comm.*, 10th Dist. No. 18AP-778, 2019-Ohio-2885, ¶ 20; *Ohio Am. Health Care, Inc. v. Ohio Bd. of Nursing*, 10th Dist. No. 13AP-1020, 2014-Ohio-2422, ¶ 22.  Therefore, we cannot agree with appellant that his due process rights were violated.  Accordingly, we overrule appellant's first assignment of error.

**IV. Conclusion**

{¶ 39} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and LUPER SCHUSTER, JJ., concur.