[Cite as *Speed Way Transp., L.L.C. v. Gahanna*, 2021-Ohio-4455.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Speed Way Transportation, LLC,
dba Speed Way Towing,

        Plaintiff-Appellant,

v.

City of Gahanna,

        Defendant-Appellee.

:
:
:
:
:
:
:

No. 20AP-239
(C.P.C. No. 18CV-10373)

(REGULAR CALENDAR)

D E C I S I O N

Rendered on December 16, 2021

**On brief:** *FROST BROWN TODD, LLC*, *Frank J. Reed, Jr.*, and *Jeremy M. Grayem*, for appellant. **Argued:** *Jeremy M. Grayem.*

**On brief:** *Michael A. Partlow*, for appellee. **Argued:** *Michael A. Partlow.*

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Plaintiff-appellant, Speed Way Transportation, LLC, appeals a judgment of the Franklin County Court of Common Pleas that granted the motion for judgment on the pleadings filed by defendant-appellee, the City of Gahanna. For the following reasons, we affirm that judgment in part and reverse it in part, and we remand this case to the trial court.

{¶ 2} On December 13, 2018, Speed Way filed a complaint against Gahanna. In the complaint, Speed Way alleged that it tows and stores motor vehicles, and its principal place of business is located in Gahanna.

{¶ 3}   On July 5, 2016, Ahmed Shehata, an agent of Speed Way, found a parcel of property in Gahanna where he wanted to situate Speed Way's operations, but the property lacked running water.  Shehata contacted Gahanna and asked whether he could operate a towing business on the property.  A Gahanna representative informed Shehata that he could operate the business as long as he provided a large water tank, a portable restroom, and drinking water for customers and employees.  Additionally, to satisfy the Gahanna Planning and Zoning Code, Shehata would have to install a wooden fence to block the view of the vehicle storage area from the street.

{¶ 4}   On July 27, 2016, Shehata picked up an application for a conditional use permit from Gahanna's offices.  While in Gahanna's offices, Shehata told a Gahanna representative that he had been trying to contact two individuals from the Gahanna Division of Police regarding establishing a towing contract with Gahanna.  Later that day, one of those two individuals called Shehata and told him to focus on getting the necessary permits and, after that, Speed Way "should be able to work with the Police Department." (Dec. 13, 2018 Compl. at ¶ 10.)

{¶ 5}   On August 2, 2016, Speed Way submitted its conditional use application to Gahanna.  Gahanna, however, denied the conditional use application because Speed Way did not have a water line to the premises.

{¶ 6}   Shehata then met with Gahanna representatives, who told Shehata that Speed Way would have to place a trailer with restroom facilities on the premises in order to obtain a conditional use permit.  Shehata obtained a trailer and placed it on the property. Next, a Gahanna representative informed Shehata that Speed Way would have to provide an accessibility ramp to the trailer, anchor the trailer, and provide a site plan prepared by a licensed architect.  Shehata protested that Gahanna had not previously advised him these actions were necessary, but the Gahanna representative told him to comply or Speed Way could not operate on the property.

{¶ 7}   On September 29, 2016, Gahanna conditionally approved Speed Way's conditional use application.

{¶ 8}   On November 4, 2016, Gahanna issued Speed Way an adjudication order requiring Speed Way to move its trailer to a different location on the premises and construct an additional accessibility ramp.  However, on February 2, 2017, a Gahanna representative

called Shehata and informed him not to worry about the requirements in the adjudication order. The next day, a Gahanna representative inspected the accessibility ramp to the trailer and instructed Shehata to make ten changes to the ramp.

{¶ 9} On February 27, 2017, a meeting occurred between Shehata and Gahanna's mayor and other city officials. Shehata complained to the Gahanna officials that every time Speed Way would comply with Gahanna's instructions, Gahanna would subsequently change what needed to be done. The Gahanna officials assured Shehata this type of conduct would not continue. Nevertheless, Speed Way still needed to complete the modifications to the accessibility ramp. Also, at the meeting, Shehata "was told that he could get a contract to tow motor vehicles for [Gahanna]." (Compl. at ¶ 24.)

{¶ 10} Eventually, Shehata completed the changes to the accessibility ramp. Gahanna representatives inspected and approved Speed Way's premises. Speed Way's conditional use application was amended and approved on May 26, 2017.

{¶ 11} On May 15, 2017, Shehata attended a meeting with Gahanna's mayor. According to Shehata, the mayor stated during the meeting that "[Speed Way] should be able to get a towing contract with [Gahanna] as [Gahanna] had only two such contracts at the time and wanted to add two more." (Compl. at ¶ 28.)

{¶ 12} Speed Way submitted a towing proposal application to Gahanna on July 19, 2017. Gahanna inspected Speed Way's premises to determine whether it complied with the terms of the Request for Proposal Gahanna had issued. On August 14, 2017, Speed Way received a letter from Gahanna that stated that Gahanna would no longer consider Speed Way for a towing contract because (1) Speed Way's vehicle storage area lacked a hard surface with proper drainage, (2) the absence of a chain-link fence, (3) ordinance violations in the vehicle storage area. According to Speed Way, Gahanna never intended to approve its towing proposal application, Gahanna approved towing proposal applications submitted by other businesses that parked vehicles on porous surfaces, and Gahanna acted in bad faith when enforcing the terms of the Request for Proposal.

{¶ 13} Based on the above facts, Speed Way asserted a claim for promissory estoppel against Gahanna. Speed Way also sought declaratory and injunctive relief. In the event the court denied Speed Way injunctive relief, Speed Way requested that the trial court award it damages in the amount of its bid-preparation costs.

{¶ 14} Gahanna answered the complaint and moved for judgment on the pleadings. In a judgment dated March 25, 2020, the trial court granted Gahanna's motion.

{¶ 15} Speed Way now appeals the March 25, 2020 judgment, and it assigns the following error:

> THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS.

{¶ 16} In reviewing a Civ.R. 12(C) motion for judgment on the pleadings, a court must construe the material allegations of the complaint and all reasonable inferences drawn from those allegations in favor of the nonmoving party. *Ohio Mfrs.' Assn. v. Ohioans for Drug Price Relief Act*, 147 Ohio St.3d 42, 2016-Ohio-3038, ¶ 10. A court will grant the motion if it finds that, beyond a doubt, the nonmoving party can prove no set of facts in support of its claim for relief. *Id.* " 'Thus, Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law.' " *Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, ¶ 18, quoting *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). Because the review of a trial court's ruling on a motion for judgment on the pleadings presents only questions of law, appellate courts review such a ruling de novo. *White v. King*, 147 Ohio St.3d 74, 2016-Ohio-2770, ¶ 13.

{¶ 17} In the case at bar, Speed Way first argues that the trial court erred in granting Gahanna judgment on the pleadings with regard to Speed Way's claim for promissory estoppel. We agree.

{¶ 18} Under the doctrine of promissory estoppel, " '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' " *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, ¶ 23, quoting Restatement of the Law 2d, Contracts, Section 90, at 242 (1981). To establish a claim for promissory estoppel, a party must prove (1) a clear, unambiguous promise, (2) the person to whom the promise was made relied on the promise, (3) reliance on the promise was reasonable and foreseeable, and (4) the person claiming reliance was injured as a result of relying on the promise. *Mocznianski v. Ohio Dept. of Medicaid*, 10th Dist. No. 18AP-894, 2020-Ohio-165, ¶ 24. However, the doctrine

of promissory estoppel is "inapplicable against a political subdivision when the political subdivision is engaged in a governmental function." *Hortman* at ¶ 25.

{¶ 19} Gahanna argues that Speed Way cannot recover on its claim for promissory estoppel because the process of contracting for the towing and storing of motor vehicles constitutes a governmental function. In determining whether it engaged in a governmental function, Gahanna looks to the definitions contained in the Political Subdivision Tort Liability Act, R.C. Chapter 2711 ("the Act"). The Supreme Court's ruling in *Hortman*, and not the Act, governs this case. Nevertheless, courts have relied on the Act's definitional section, R.C. 2744.01, to determine what acts constitute governmental functions in the context of a promissory estoppel claim. *Nordonia Landscape Supplies, LLC v. Akron*, 9th Dist. No. 29618, 2020-Ohio-2809, ¶ 4, fn.1; *United States Bank, NA v. Cincinnati*, 1st Dist. No. C-170526, 2019-Ohio-1866, ¶ 3.

{¶ 20} R.C. 2744.01(C)(1) defines the term "governmental function." A function is governmental if it is among those specific functions listed in R.C. 2744.01(C)(2). R.C. 2744.01(C)(1); *Moore v. Lorain Metro. Hous. Auth.*, 121 Ohio St.3d 455, 2009-Ohio-1250, ¶ 12. Alternatively, a function is governmental if it meets one the three independent standards enumerated in R.C. 2744.01(C)(1)(a) through (c). *Moore* at ¶ 12. Under those standards, a function is governmental if: (1) it is imposed upon the state as an obligation of sovereignty, (2) it is carried out for the common good of all citizens of the state, or (3) it promotes or preserves the public peace, health, safety, or welfare; involves activities not customarily engaged in by nongovernmental persons; and is not specified in R.C. 2744.01(G)(2) as a proprietary function. R.C. 2744.01(C)(1)(a) through (c).

{¶ 21} Gahanna contends that it engaged in a governmental function under R.C. 2744.01(C)(2)(e), which lists "[t]he regulation of the use of, and the maintenance * * * of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds" as a governmental function. To support this argument, Gahanna alleged in its motion for judgment on the pleadings that the towing and storage services provided under the intended contract would assist Gahanna's police and fire departments with the removal of motor vehicles from roadways and other public locations. Gahanna expands upon this allegation in its appellate brief, stating:

> Gahanna's solicitation, consideration and ultimate acceptance
> or rejection of bids from private companies for vehicle towing

services is unquestionably a "governmental function."  These towing services will assist Gahanna's police and fire departments with the removal of vehicles from roadways and other public locations.  This is a public safety concern for Gahanna, as abandoned or disabled vehicles cannot be left to sit on or near active city roadways.  To accomplish this, Gahanna must hire an outside company to perform this important service.

(Appellee's Brief at 6.)

{¶ 22} Unfortunately for Gahanna, neither the complaint nor answer contain the factual allegations it makes in its motion and appellate brief.  Indeed, Gahanna does not cite any part of the complaint or answer for its allegations.  A motion for judgment on the pleadings permits a court to consider only the complaint and answer.  *State ex rel. Fiser v. Kolesar*, 164 Ohio St.3d 1, 2020-Ohio-5483, ¶ 8.  Consequently, we cannot rely on Gahanna's extrinsic factual allegations.  Without those factual allegations, we have no basis on which to conclude that Gahanna entered into the contracting process to engage in the governmental function of regulating and maintaining city roadways.

{¶ 23} Gahanna additionally cites the decision of *Suru v. Cleveland*, 8th Dist. No. 73639 (Feb. 25, 1999), for the proposition that its contracting process constituted a governmental function.  In *Suru*, the Cleveland Division of Police towed a motor vehicle the police suspected was stolen.  The Eighth District Court of Appeals concluded that this action qualified as a governmental function under R.C. 2744.01(C)(2)(a), which provides that "[t]he provision * * * of police * * * services or protection" is a governmental function.  Gahanna, however, does not contend that it seeks to contract for towing services in order to tow suspected stolen vehicles.  Moreover, even if Gahanna did make that contention, there is no factual allegation in the pleadings to support it.  *Suru*, consequently, is not applicable to this case.

{¶ 24} In sum, Gahanna has failed to show that no material factual issues exist and that it is entitled to judgment as a matter of law on the question of whether it was engaged in a governmental function.  The trial court, therefore, erred in granting Gahanna judgment on the pleadings with regard to Speed Way's claim for promissory estoppel.

{¶ 25} Next, Speed Way argues that the trial court erred in granting Gahanna judgment on the pleadings with regard to Speed Way's claim for declaratory judgment. We agree.

{¶ 26} A court grants a Civ.R. 12(C) motion directed to a declaratory judgment claim where no real controversy or justiciable issue exists between the parties, or where declaratory relief would not terminate the uncertainty or controversy. *Parker v. Upper Arlington*, 10th Dist. No. 05AP-695, 2006-Ohio-1649, ¶ 17. For purposes of declaratory judgment, a "justiciable issue" requires the existence of a legal interest or right, and a "real controversy" exists where there is a genuine dispute between parties with adverse legal interests. *State ex rel. Withers v. State Teachers Retirement Sys.*, 10th Dist. No. 17AP-124, 2017-Ohio-7906, ¶ 32.

{¶ 27} In the case at bar, Speed Way alleged that a real controversy existed between it and Gahanna regarding:

> whether [Speed Way's towing proposal] Application and facilities substantially conformed with the requirements contained in the Request for Proposal submitted to [Speed Way] by [Gahanna], whether [Gahanna] has awarded towing contracts to others that did not conform [with the Request for Proposal], whether [Gahanna] abused its discretion and awarded the towing contracts in an arbitrary and unreasonable fashion and whether [Speed Way] is entitled, as a result, to be awarded a towing contract for [Gahanna].

(Compl. at ¶ 41.)

{¶ 28} Gahanna argues that there is no controversy because the discretion to award a towing contract is entirely within Gahanna's control and Speed Way has no legal right to a towing contract. Speed Way replies that the trial court may review the procedure Gahanna used to award the towing contract and determine whether Gahanna complied with the terms of the Request for Proposal in awarding the contract.

{¶ 29} According to the complaint, Gahanna used the request-for-proposal method, and not pure competitive bidding, to procure towing services. Consequently, neither state law nor city ordinance regulated how Gahanna evaluated the proposals vendors submitted

in response to Gahanna's Request for Proposal.[1]  However, a governmental entity is bound "to follow rules it has itself established, including rules governing the evaluation of proposals where statutory competitive bidding is not required." *Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist.*, 73 Ohio St.3d 590, 603 (1995).  Consequently, in *Danis*, even though the competitive bidding requirements of R.C. Chapter 307 did not bind the Clark County Solid Waste Management District, the District had to follow the terms it set in the request for proposal.  *Id.*  The Supreme Court of Ohio determined that the District's award decision was based on criteria expressly set forth in the request for proposal, so the District had not abused its discretion in making the award.  *Id.* at 604.  The court, therefore, found the disappointed bidder was not entitled to injunctive relief in the form of an order requiring the District to execute a contract with it.  *Id.* at 605-06.

{¶ 30} Given the holding in *Danis*, Gahanna's discretion to award the towing contract was not completely unfettered; rather, it was limited by the terms of the Request for Proposal.  Once Gahanna adopted certain criteria in the Request for Proposal, it was bound to follow that criteria in awarding the towing contract.  Speed Way, as a bidder to provide Gahanna towing services, has a legal interest in holding Gahanna to its obligation to comply with the terms it set.  Furthermore, as alleged in Speed Way's complaint, a controversy exists regarding whether Gahanna based its decision to award the towing contract on the criteria in the Request for Proposal.  Consequently, the complaint establishes both a justiciable issue and a real controversy between the parties.

{¶ 31} Gahanna, however, argues that the trial court lacks the authority necessary to declare that Speed Way is entitled to a towing contract because only Gahanna can decide to whether to contract with Speed Way.  As an initial matter, we note that the complaint does not request a declaration that Speed Way is entitled to a towing contract; instead, it asks the trial court to award a towing contract to Speed Way.  A request for such injunctive relief is permitted under R.C. 2721.09, which allows a court to "grant further relief based

---

[1] Gahanna has only adopted minimal requirements governing the request-for-proposal process.  *See* Gahanna Codified Ordinances 135.04(d).  In short, Section 135.04(d) requires that requests for proposals contain "[s]pecifications or descriptions."  Although proposals should normally be submitted in writing, they may be obtained verbally.  "[T]he City employee conducting the negotiation [must] be * * * fully familiar with item(s) or services being procured, the need for the materials or services, and will be further qualified to inspect and accept the finished product."  Finally, the department or agency involved must ascertain that sufficient funds are available for the purchase.

on a declaratory judgment."  To be sure, regardless of the form of the relief requested, Gahanna's point remains the same:  the trial court lacks the authority to grant it.  We, however, are unpersuaded.

{¶ 32} While Ohio courts do not have the discretion to make procurement decisions for a municipality, they do review such decisions for an abuse of discretion.  *Cedar Bay Constr. v. Fremont*, 50 Ohio St.3d 19, 21-22 (1990).  Of course, in reviewing a municipality's decisions, courts remain mindful that, " 'in absence of evidence to the contrary, public officers, administrative officers and public boards, within the limits of the jurisdiction conferred by law, will be presumed to have properly performed their duties and not to have acted illegally but regularly and in a lawful manner.  All legal intendments are in favor of the administrative action.' "  *Id.* at 21, quoting *State ex rel. Shafer v. Ohio Turnpike Comm.*, 159 Ohio St. 581, 590 (1953).  If a municipality abuses its discretion in awarding a public contract, a court may grant injunctive relief.  *Cementech, Inc. v. Fairlawn*, 109 Ohio St.3d 475, 2006-Ohio-2991, ¶ 10 (warning courts that "the granting of an injunction should be done with caution," especially when a court is asked to "control the action of another department of government") (internal quotations omitted).

{¶ 33} In the end, we conclude that both a justiciable issue and a real controversy exists, and the trial court possesses the authority necessary to resolve the controversy between the parties and grant Speed Way further relief, if it is entitled to any.  We, therefore, determine that the trial court erred in granting judgment on the pleadings with regard to the declaratory judgment claim.

{¶ 34} Finally, Speed Way argues that the trial court erred in granting Gahanna judgment on the pleadings with regard to its "claim" for the "recovery of costs of bid."  We disagree.

{¶ 35} Speed Way bases its request for its bid-preparation costs on *Meccon, Inc. v. Univ. of Akron*, 126 Ohio St.3d 231, 2010-Ohio-3297.  In that case, the question before the Supreme Court of Ohio was whether a bidder on a public-improvement project could recover bid-preparation costs as damages when the public authority awarding the contract failed to comply with state competitive-bidding laws.  The Supreme Court held that:

> reasonable bid-preparation costs may be recovered if the rejected bidder promptly sought but was denied a timely injunction to suspend the public-improvement project pending

resolution of the dispute and a court later determines that the bidder was wrongfully rejected by the public authority but injunctive relief is no longer available because the project has already been started or is completed under a contract awarded to another bidder.

*Id.* at ¶ 1.

{¶ 36} When a public authority violates competitive-bidding laws in awarding a competitively bid project, the rejected bidder must seek a timely injunction to stay the project so a court can resolve the bid dispute and, if necessary, award the contract to the wrongfully rejected bidder. *Cementech*, 109 Ohio St.3d 475, 2006-Ohio-2991, at ¶ 10. If a rejected bidder seeks prompt injunctive relief, but the court refuses to grant the requested injunction to stay the project, a determination of the allegation of wrongful conduct by the public authority will not occur until much later in the litigation. *Meccon* at ¶ 12. This delay in the delivery of a judgment favoring the rejected bidder poses a significant problem for bidders on public-improvement projects. Once a public-improvement project commences, the rejected bidder will not be able to perform the public-improvement project even if the bidder demonstrates that its bid was wrongfully rejected. *Id.* Thus, if limited to injunctive relief, the wrongfully rejected bidder is left with no remedy. *Id.* at ¶ 13. Consequently, in *Meccon*, the Supreme Court expanded the wrongfully rejected bidder's remedy to include the reasonable costs it incurred in the preparation of its bid, "if [the] bidder promptly sought, but was denied, injunctive relief and it is later determined that the bidder was wrongfully rejected and injunctive relief is no longer available." *Id.*

{¶ 37} This court has twice expressed reluctance to extend *Meccon* in cases where a disappointed bidder challenged the legality of the request-for-proposal process that a governmental entity used to award contracts involving goods and/or services, like the contract at issue here. *Delasoft, Inc. v. Ohio Dept. of Adm. Servs.*, 10th Dist. No. 19AP-761, 2020-Ohio-3558, ¶ 28-36; *Modern Office Methods, Inc. v. Ohio State Univ.*, 10th Dist. No. 11AP-1012, 2012-Ohio-3587, ¶ 21-24. In *Delasoft*, we pointed out that a court might still grant injunctive relief to a wrongfully rejected bidder on a contract for goods or services, even after a competitor starts providing goods or services under the contract. *Id.* at ¶ 30-31. Such relief remains possible because providers of goods or services generally can be switched with little difficulty or cost, unlike contractors who construct public-

improvements where "one task substantially builds on what has been done before and * * * a shift of providers inevitably would burden taxpayers with significant extra cost." *Id.* at ¶ 31. With injunctive relief available, the Supreme Court's rationale for permitting the recovery of bid-preparation costs disappears.

{¶ 38} Moreover, even assuming *Meccon* applies to this case, Speed Way is not eligible to recover bid-preparation damages because it did not promptly seek injunctive relief. Gahanna informed Speed Way on August 14, 2017 that Gahanna was no longer considering it for a towing contract. Speed Way did not file suit against Gahanna until over one year later, on December 13, 2018. Speed Way never sought a temporary restraining order, and it merely appended a request for injunctive relief to its declaratory judgment claim. Given its lengthy delay in seeking injunctive relief, Speed Way cannot recover its bid-preparation costs under *Meccon*. The trial court, therefore, did not err in granting Gahanna judgment on the pleadings with regard to those damages.

{¶ 39} In sum, we conclude that the trial court erred in granting Gahanna judgment on the pleadings with regard to Speed Way's claims for promissory estoppel and declaratory judgment. However, the trial court did not err in granting Gahanna judgment on the pleadings with regard to Speed Way's request for damages in the form of its bid-preparation costs.

{¶ 40} For the foregoing reasons, we sustain Speed Way's assignment of error in part, and we overrule it in part. We affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, and we remand this matter to the trial court for further proceedings consistent with law and this decision.

*Judgment affirmed in part, reversed in part;*
*case remanded.*

BROWN and MENTEL, JJ., concur.

—————————————